[No. 34648. Department Two. November 28, 1958.]

WELLS LABBERTON, *Respondent*, v. GENERAL CASUALTY COMPANY OF AMERICA, *Appellant*.[1]

[1]Reported in 332 P. (2d) 250.

*Minnick & Hahner* and *James B. Mitchell*, for appellant.

*Gose, Williams & Gose*, for respondent.

FOSTER, J.—Appellant, General Casualty Company, appeals from a judgment against it on a blanket liability policy. The facts were stipulated and, consequently, the issue is one of law as to whether under the stipulated facts there is liability under the terms of the policy.

So far as material, the terms of the policy are:

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability assumed by him under contract (excluding liability under any contract not wholly in writing) or imposed upon him by law; . . .

"(c) for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

By subsequent rider,[2] the word "occurrence" was substituted for the word "accident."

Respondent, plaintiff below, was in the fertilizer business in Walla Walla and sold fertilizer to a farmer and supplied him with an apparatus with which to apply the fertilizer to his wheat land. Because of a defect in said apparatus, the details of which are immaterial, only a portion of the land

[2]"The words 'caused by accident' as used in insuring agreement 1(C) (property damage other than automobile) are deleted. The word 'accident' whereever used in this policy with respect to 'property damage other than automobile' shall be construed to mean 'occurrence' and all damage arising out of a continuous or repeated exposure to substantially the same conditions shall be considered as arising out of one occurrence."

was fertilized, and, consequently, during the crop year in question, the wheat yield was diminished. Because of this the farmer threatened to sue respondent for the damage caused in furnishing him a defective applicator for the fertilizer. The defense of that claim was tendered appellant and rejected by it because the farmer's loss was not within the policy coverage.

It is stipulated that the farmer's claim was thereafter settled by the respondent and that the sum paid was reasonable.

Thus it is that the issue presented here is one of law as to whether there was coverage under the policy.

Appellant's first argument is that the liability of the respondent to the farmer for his damage is contractual and, consequently, within the exclusionary clause excepting liability under any contract not wholly in writing.

Respondent's liability to the farmer was one arising as a matter of law from the respondent's breach of his implied warranty of fitness that the fertilizer applicating apparatus was fit for the purpose of fertilizing the farmer's fields.

■ At the outset, it must be remembered that the law in Washington is settled by a long line of cases recently reaffirmed by *Selective Logging Co. v. General Cas. Co.*, 49 Wn. (2d) 347, 301 P. (2d) 535, that exclusionary clauses are strictly construed against the insurer. The reasons for this rule were very graphically explained by the supreme court of Montana in *Montana Auto-Finance Corp. v. British & Fed. Fire Underwriters*, 72 Mont. 69, 232 Pac. 198, as follows:

"It is a matter of common knowledge that insurance companies prepare their own contracts of insurance. The language of the policy is their language. They do not permit the insured to have a voice in the drawing of his own contract; nor does he negotiate with reference to its terms in the sense that negotiations are carried on before agreements are reached in ordinary contracts. (Joyce on Insurance, p. 594.) Policies of insurance are invariably complex and are understood by laymen with difficulty, and as a result the insured generally makes a request for the kind of insurance he desires and then signs 'on the dotted line' upon a formid-

able appearing printed form with the provisions of which the average assured has slight, if any, acquaintance. The policies are prepared by skilled lawyers retained by the insurance companies, who through years of study and practice have become expert upon insurance law, and are fully capable of drawing a contract which will restrict the scope of the liability of the company with such clearness that the policy will be free from ambiguity, require no construction, but construe itself. Because of reasons such as these, whenever the contract of insurance is so drawn as to be ambiguous, uncertain and to require construction, the courts of this country resolve the doubt in favor of the insured and against the insurer, in accordance with the rule *contra proferentem.* . . ."

Exclusionary clauses in insurance contracts, consequently, are very strictly construed against the insurer.

". . . Exceptions to the general liability are to be strictly construed against the company, and any uncertainty in the meaning of the exclusion clause should be decided in favor of insured. . . ." 45 C. J. S. 906, § 834 (a).

See, also, 1 Couch, Cyclopedia of Insurance Law, 390, § 187.

The insuring clause is divided: The first part insures against liability assumed under contract or liabilities imposed by law, but excludes liability under any contract not wholly in writing. It is stipulated that there was no written contract between the respondent and his customer.

■ Respondent's liability for failure to furnish an apparatus suitable for the purpose specified is a liability imposed by operation of law. The law is stated in 8 C. J. S. 258, § 25, as follows:

"Where a bailment for mutual benefit is one of hiring, there is imposed on the bailor, in the absence of special contract or representation, an obligation or warranty, similar to the implied warranty of fitness in the sale of personal property, that the thing or property hired for use shall be reasonably fit for the purpose, or capable of the use known to be intended, that is, that it shall possess the qualities usually belonging to things of that kind when used for the same purpose; and the bailor is liable to the bailee, and to persons using the thing at the bailee's invitation, for injuries caused by reason of the thing not being in proper condition

when delivered. Furthermore, where the bailor has breached his implied warranty of fitness the bailee has a right to rescind the contract of bailment."

See, also, Annotation, 31 A. L. R. 540; *Butler v. Northwestern Hospital*, 202 Minn. 282, 278 N. W. 37; *Standard Oil Co. of New York v. Boyle*, 231 App. Div. 101, 246 N. Y. Supp. 142.

The exclusionary clause applies to contractual operations voluntarily assumed and not to anything else. The respondent's liability to the farmer in this instance, however, was one imposed by law. The legal problem with which we are confronted is quite similar to that decided in *Dryden v. Ocean Acc. & Guarantee Corp.*, 138 F. (2d) 291. There the policy covered a liability imposed by law. The claim was that the right to wages, maintenance and cure was contractual by nature and, therefore, was not a liability imposed by law. The discussion of the court of appeals (C. A. 7th) is quite significant. That court said:

"Appellant's argument stems from a strict and technical construction of the policy's phrase 'liability imposed by *law*.' It argues that the seaman's right to maintenance and cure being incident to the contract relation of employment, there is here sought to be enforced a pure *contract* right, not a right correlative to a 'liability imposed by law,' or an action ex delicto due to negligence. With this argument we are unable to agree.

"Concededly an employee-employer relationship is a contractual one. Probably many of the details of that relationship—wages, hours, etc., are fixed by specific contract provisions and are express contractual rights. But the right here sought to be enforced by the seaman was not founded on a 'meeting of the minds'—it was inexorably attached by ancient and established maritime *law* to every seaman's contract of employment. The parties had no choice in the matter. It was a duty superimposed by *law* coincidental with the formation of the contractual relation. The seaman could not contract against it—his or his employer's will is powerless to destroy it. This aspect alone reflects the true nature of the right here sought to be enforced. It is a right which the maritime law, in the wisdom of experience, found necessary and just, for the complete protection of seamen, whom maritime law has treated as 'wards of admiralty.'"

The converse of the situation was presented in *Larsen v. General Cas. Co.*, 99 F. Supp. 300, affirmed 196 F. (2d) 170. The insuring clause read as follows:

" . . . 'To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon the Insured by law for damages because of injury to or destruction of property, including the loss of use thereof, as the result of an accident occurring during the effective period of this endorsement, caused solely and directly by reason of the business operations of the Insured described in and covered by the Schedule of this endorsement, except as to any operations or exposure in such premises which are shown to be excluded in said policy or, which are expressly shown to be excluded elsewhere in this endorsement, and subject further to all exclusions, conditions and limitations hereinafter contained.' "

The insurance company declined to defend. The insured's business was servicing and repairing oil burners. While the insured was repairing an oil burner for a customer, a fire ensued because of a negligent mishap. The company contended that the policy excluded obligations assumed by contract and that, because the insured agreed to clean the furnace, there was no liability under its policy. Judge Nordbye's conclusion is contained in the following paragraph:

"And likewise there is an utter absence of any persuasiveness in defendant's contention that this accident is excluded from coverage because the 'liability was assumed by the insured under any contract or agreement.' Defendant argues that because the insured had a contract to clean and service the oil burner, the resulting accident comes within the meaning of the exclusion. Obviously, this provision is only intended to exclude liability which the insured assumes by some agreement or understanding of contract. Such an agreement would preclude the insured from interposing any defense available to him under the law. The policy only intends to cover liability 'imposed upon the insured by law.' All business transactions are entered into according to some sort of an agreement or understanding. This business venture was the usual type which the policy was designed to cover within the terms of the policy if liability was imposed by law. It is conceded that liability for the Clinite fire was imposed upon Larsen by law. The exclusion provision referred to is patently not applicable."

█ The liability for breach of implied warranty is one imposed by law and is not an element of agreement between the parties, and its application does not depend upon any intention of either party to create or assume that liability. *Bekkevold v. Potts*, 173 Minn. 87, 216 N. W. 790, 59 A. L. R. 1164; *Moore v. James*, 5 Utah (2d) 91, 297 P. (2d) 221; 8 C. J. S. 258, § 25.

█ The liability for breach of the implied warranty was not, therefore, within the exclusionary clause which excludes liability under any contract not wholly in writing. If the question were doubtful, it must be remembered that the burden of proving that the loss is within the exclusionary clause is upon the insurance carrier. *American Indemnity Co. v. Sears, Roebuck & Co.*, 195 F. (2d) 353. It has not sustained that burden.

Appellant insists that there was no damage because of injury to property within the meaning of the insuring clause previously noticed. Appellant seizes upon a passage from an opinion of the supreme court of Illinois in *Munn v. People*, 69 Ill. 80, affirmed *sub nomine Munn v. Illinois*, 94 U. S. 113, 24 L. Ed. 77, that anticipated profits are not property. However, that court was not concerned with an insuring clause such as the one with which we are called upon to deal here because the sole issue was the constitutionality of the Illinois act regulating public warehousing. Appellant relies, likewise, upon *Oldfield v. Tulsa*, 170 Okla. 329, 41 P. (2d) 71, 98 A. L. R. 953, in which the issue was whether a barber's anticipated profits occasioned by the temporary closing of a street was property within the eminent domain provision of the Oklahoma constitution. We do not find either case persuasive.

█ On the other hand, property is a term of the very widest significance. It is here used without qualification and should not receive a narrow or technical meaning, and as the United States court of appeals (C. A. 10th) said in *Citizens State Bank of Barstow, Texas v. Vidal*, 114 F. (2d) 380:

" . . . . 'Property' is a word of very broad meaning and when used without qualification, may reasonably be con-

strued to include obligations, rights and other intangibles, as well as physical things. . . ."

and includes every invasion of one's property rights by actionable wrong (*Jay Bee Apparel Stores v. 563-565 Main Street Realty Corp.*, 130 Misc. 23, 223 N. Y. Supp. 537), and, in an insuring clause, means:

". . . The term 'property' is 'nomen generalissimum' and is one of the broadest terms known to the law. It generally includes not only physical property itself but includes the use and enjoyment of physical property, which is an essential quality or attribute of absolute property. I can find nothing in the statute to plainly indicate a legislative intent to restrict the term property to its most limited sense of physical property." *Thorrez & Maes Mfg. Co. v. American Central Ins. Co.*, 32 F. Supp. 110.

It is not limited to tangible or intangible property, but is an all encompassing word. We said in *Hawkins v. Front Street Cable R. Co.*, 3 Wash. 592, 28 Pac. 1021:

". . . But inasmuch as the right to sue for a tort which one has suffered is a chose in action, and therefore property, . . ."

The farmer lost his selected use of the land for one crop year. He lost the right to plant his seed wheat in properly fertilized soil. For the loss of this right he sustained damage which respondent paid. The language of the supreme court of South Carolina in *Gasque v. Town of Conway*, 194 S. C. 15, 8 S. E. (2d) 871, is quite apt:

"Property in a thing consists not merely in its ownership and possession, but in the unrestricted right of use, enjoyment, and disposal. Anything which destroys one or more of these elements of property to that extent destroys the property itself. It must be conceded that the substantial value of property lies in its use. *Henderson v. City of Greenwood*, 172 S. C., 16, 172 S. E., 689. If the right of use be denied, the value of the property is annihilated, and ownership is rendered a barren right."

It is stated in 42 Am. Jur. 189, § 4:

"Property, as heretofore defined, is composed of certain constituent elements, to wit, the unrestricted right of use,

enjoyment, and disposal of the particular subject of property. . . ."

Attention is directed to the following statement in 73 C. J. S. 135, 144, § 1:

". . . and that anything which destroys one or more of the elements of property to that extent destroys the property itself, although title and possession remain undisturbed."

The trial court's conclusion that the insured respondent was obligated to pay his customer for the damage which he sustained by breach of his implied warranty of fitness was correct, and that all elements of liability under the blanket liability policy are present.

The judgment is affirmed with costs to respondent.

HILL, C. J., DONWORTH, WEAVER, and ROSELLINI, JJ., concur.