No. 12505

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

SAFECO INSURANCE COMPANY,
a corporation,

Plaintiff and Appellant,

-vs-

D. E. MUNROE et al.,

Defendants and Respondents.
----------------------------------------------------
SAFECO INSURANCE COMPANY,
a corporation,

Third Part Plaintiff,

-vs-

COGSWELL AGENCY, INC., a Corporation,

Third Party Defendant and Respondent.

---

Appeal from:  District Court of the Eighth Judicial District,
              Honorable Trumas Bradford, Judge presiding.

Counsel of Record:

    For Appellant:

        Loble, Picotte, Loble, Pauly and Sternhagen, Helena,
          Montana
        Gene A. Picotte argued, Helena, Montana

    For Respondent:

        Dzivi, Conklin, Johnson & Nybo, Great Falls, Montana
        Louis D. Nybo argued, Great Falls, Montana
        Church, Harris, Johnson & Williams, Great Falls, Montana
        Charles C. Lovell argued, Great Falls, Montana
        Smith, Emmons & Baillie, Great Falls, Montana
        Jardine, Stephenson, Blewett & Weaver, Great Falls,
          Montana
        Jack L. Lewis argued, Great Falls, Montana

---

Submitted:  September 11, 1974

Decided:  OCT 16 1974

Filed: OCT 16 1974

Thomas J. Kearney
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a judgment of the district court of the eighth judicial district, in and for the County of Cascade, which rendered partial summary judgment in favor of defendant, D. E. Munroe, and against plaintiff, Safeco Insurance Company.

On November 5, 1971, John D. Buchanan filed suit in district court in Cascade County against David E. Munroe. The amended complaint in said cause states generally that Harold Schilling was farming Buchanan's land north of Cascade and that Schilling ordered seed wheat from Munroe who represented that it was spring wheat, but it was in fact winter wheat. The complaint further alleges that Munroe told Schilling to replant with spring wheat and, although this was done, Buchanan sustained losses equivalent to the costs of replanting and thirty bushels per acre for one hundred forty-nine acres for which Munroe is liable.

On January 4, 1972, Viggo O. Andersen and Einer G. Hovland, co-partners, doing business as Andersen & Hovland, filed suit in district court in Cascade County against Munroe Ranch Co., Inc. The complaint in said cause states generally that Munroe agreed to sell and deliver spring wheat seed to Andersen & Hovland and the same was planted by them but it was actually winter wheat which did not come up resulting in a crop loss, expense of destroying a crop to protect the next crop from disease, future additional farming expense, and future crop loss, or, in the alternative, the alleged damages are said to be measured by cost of seed, cost of treating seed, cost of transporting seed, cost of preparing soil to receive seed, cost of seeding and fertilizing, cost of spraying and top-dressing, loss of use of lands for one crop season, expense of destroying crop to protect next crop from disease, future additional farming expense, and future loss of productivity.

Munroe, the defendant in the two basic cases described

above, purchased a "Growers & Ranchers" policy of insurance from Safeco Insurance Company, the plaintiff in the instant action. Listed on the policy as the "insured" is "D. E. Munroe, Donald G. Munroe and David M. Munroe, DBA Munroe Ranch Company" The policy had a three year term from August 20, 1970 to August 20 1973. The portions of the policy pertinent to this appeal are as follows:

"I.  LIABILITY COVERAGE

"The company will pay all damages the insured is obligated to pay for liability imposed by law: (1) upon him; or (2) upon another, but assumed by him under a contract, because of bodily injury or property damage to which this insurance applies, caused by an occurrence.  The company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient.  The company shall not be obligated to pay any claim or judgment or defend any suit after the applicable limits of the company's liability has been exhausted by payment of judgments or settlements.

"Exclusions

"This insurance does not apply:

" * * *

"(d) to property damage * * * (6) to the named insured's products arising out of such products or any part of such products * * *

" * * *

"DEFINITIONS

" * * *

"'damages' includes damages for death and for care and loss of services resulting from bodily injury and damages for loss of use of property resulting from property damage;

" * * *

"'named insured's products' means goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof (other than a vehicle), but 'named insured's products' shall not include a vending machine or any property

- 3 -

other than such container, rented to or located for use of others but not sold * * *.

" * * *

"'property damage' means injury to or destruction of tangible property * * *."

Safeco contends here and alleged in its complaint that the policy coverage was never intended to insure against losses resulting from resale of products such as the selling of seed wheat the insured happened to have on hand; and that, for such coverage, such persons wishing to be so insured must purchase the "misdelivery of seed" endorsement available at additional premium. However, it is uncontradicted by Safeco that Munroe was never offered such an endorsement nor that Munroe was even aware of the existence of such an endorsement.

Munroe tendered both coverage and duty to defend the two aforestated actions. Both coverage and the duty to defend were denied by Safeco. Safeco then brought the instant declaratory judgment action asking the court to construe the policy provisions and to declare that Safeco has not contracted to cover the risks or the damages within the contemplation of the two basic actions and has no duty to defend them.

Safeco brought Harold J. Schilling and Jim Schilling into the case as defendants because at that time Safeco believed that the Schillings claimed to have suffered a loss arising out of the same or similar occurrence and were claiming that they also were entitled to recover against Munroe. On April 18, 1973, the Schillings brought an action which is similar to the first two basic actions. It would appear that the outcome of this appeal will determine also whether or not there is coverage and duty to defend under this new action brought by the Schillings.

In the instant case, defendants filed motions to dismiss and to strike which were ruled upon by the district court. The

- 4 -

district court ordered Safeco's allegations referring to the "misdelivery of seed" endorsement stricken from its complaint. The defendants then answered and counterclaimed against Safeco seeking to avoid the policy limits on the grounds, inter alia, of negligence and estoppel.

Safeco then brought a third party complaint against the Cogswell Agency, Inc., of Great Falls, who had sold the policy of Safeco, alleging, inter alia, that Cogswell had represented to defendant Munroe that it was authorized to act for Safeco in ways in which it was not authorized to act, indicating there was coverage for the results of the seed wheat mix up when there was not. Cogswell denies this allegation.

Thereafter Cogswell moved for summary judgment and Munroe moved for a partial summary judgment. The district court issued its summary judgment which included findings of fact and conclusions of law holding that there was coverage and there was a corresponding duty to defend. It is from this decision of the district court that Safeco appeals. The district court denied Cogswell's motion for summary judgment on the third-party complaint and made no ruling on the counterclaims of defendants. Those issues are not now before this Court.

To stop the continuance of the two basic actions pending the appeal of the instant action, Safeco acquired from the district court an order staying proceedings in those actions. The defendants in the instant action thereafter received a modification of the stay of proceedings to the effect that discovery in the two basic actions could continue. Safeco then appealed the order modifying the stay of proceedings allowing discovery. This Court then entered its order staying discovery in the two basic actions pending this appeal.

Safeco presents five issues for our consideration:

- 5 -

(1) Whether, because the coverage is only for injury to or destruction of "tangible" property, the district court erred in holding that the alleged loss was covered by the policy?

(2) Whether liability coverage for property damages arising out of insured's products was excluded by the policy?

(3) Whether the district court erred in striking the allegations in Safeco's complaint concerning the "misdelivery of seed" endorsement?

(4) Whether there is a duty to defend the underlying cases in district court?

(5) Whether the appeal from the district court's order modifying the stay of proceedings was necessary to protect Safeco?

We answer the first three questions in the negative, the fourth in the affirmative and the fifth we hold to be moot. We affirm the decision of the district court.

For purposes of discussion of the first issue we would like to set out the first sentence of the coverage provision as it would appear if the irrelevant portions were deleted and the definitions incorporated therein:

> The company will pay all damages, including damages
> for loss of use of property resulting from injury to
> or destruction of tangible property, the insured
> is obligated to pay for liability imposed by law
> upon him because of injury to or destruction of
> tangible property to which this insurance applies,
> caused by an occurrence.

The insurance applied to product liability coverage although, as later discussed, Safeco contends that such coverage was limited to bodily damages, property damage being excluded. Safeco contends that whatever injures suffered by Buchanan and Andersen & Hovland, as alleged in their complaints, were injuries to "intangible" property and not injuries to "tangible" property. We find this contention

to be without merit.  We find no error in and adopt the finding

of fact No. 8 of the district court:

> "8.  That if the claimants against Munroe as
> aforedescribed suffered any loss by virtue of
> having received and planted the wrong type of
> seed wheat, it follows, as a matter of common
> knowledge, that the land in which the seed wheat
> was planted would have been damaged in that said
> land would have lost a portion of its retained
> moisture, would have lost a portion of its re-
> tained fertilizer, weeds would have grown thereon
> where no crop had grown, erosion would have
> occurred, said land would have to have been re-
> cultivated in order to render it suitable for
> the planting of another crop of the same or
> similar nature, and that if little or no crop
> grew, the claimants would have received little or
> no compensation by virtue of having lost a crop,
> and would have suffered loss of use of their
> lands".

Although Safeco takes five and one-half pages of its

brief to define the word "tangible", we find it to be beyond

dispute that a Montana wheat field and the crop therein, is

tangible property.  The district court clearly found injury to

the wheat fields and thus injury to tangible property.  The

allegations of costs of replanting, thirty bushels per acre for

one hundred forty-nine acres, expense of destroying a crop to

protect the next crop, cost of preparing soil, etc., is not

damage to "intangible" property, as Safeco contends, but is merely

the measure of the damage to the "tangible" wheat fields.  Once

injury to tangible property is found, the policy clearly states

that it also covers damages for loss of use of property resulting

from injury to tangible property.

The plain, clear, unambiguous meaning of the language in

the policy is that once it has been found that tangible property

has been damaged, there is insurance coverage for all damages be-

cause the term damages is used without limitation and, in fact,

is expanded to include damages for loss of use.  The issue then

becomes whether or not Safeco's policy language is sufficiently

strong enough to exclude insurance coverage for consequential

- 7 -

damages--loss of profits. It might be that loss of profits is an item of intangible damage. However, it is of utmost importance to note that the policy does not, by any stretch of the imagination, require that there be tangible damage to tangible property. Clearly, it was not Safeco's intention to exclude consequential damages or they would have said so in the policy.

Safeco, in attempting to distinguish, among others, Wells Labberton v. General Casualty Co. of America, 53 Wash.2d 180, 332 P.2d 250, and St. Paul Fire & Marine Insurance Co. v. Northern Grain Co., 365 F.2d 361, 368, (8th Cir.), argues that the courts there were not faced with policy language limiting coverage to injury to "tangible" property. We deem it unnecessary to go into the factual bases or issues of those cases, noting merely that they were similar to the instant appeal and the losses were held covered by the policies. Because the policies in those cases covered injuries to "property" rather than injuries to "tangible property", Safeco reasons that those cases are not applicable. However, Safeco's argument falls one step short of the mark. To determine whether each particular case is applicable or not, the case must be examined to determine whether the injury involved was to tangible or intangible property. If that injury is to tangible property, then the addition of the word "tangible" to the definition of property would have no effect on the rule of the case. In each of the above cases, and in the instant appeal, the injury was to a wheat field and a wheat field is tangible property. And, despite Safeco's denials that the injuries in Wells Labberton and Northern Grain were injuries to "tangible" property, the Court in Northern Grain said, at p. 366.

> "Just as the diminution in value of the buildings in Hauenstein [Hauenstein v. St. Paul-Mercury Indem. Co., 242 Minn. 354, 65 N.W.2d 122] and Dakota Block [Dakota Block v. Western

Cas. & Surety Co., 81 S.D. 213, 132 N.W.2d 826]
constituted property damage within the ambit of
the insuring agreement, so also does the dimin-
ution in the productivity of the wheat crop, as
the result of an inferior and deficient quality
of seed wheat, constitute property damage within
the coverage of this policy. <u>The crops raised by
Northern's customers were no less physical prop-
erties</u> than the buildings in <u>Hauenstein</u> and
<u>Dakota Block</u>." (Emphasis supplied.)

We hold that the injuries alleged in the complaints of

Buchanan and Andersen & Hovland are injuries to tangible property

within the coverage of the policy of insurance sold by Safeco to

Munroe.

The second issue raised concerns the following exclusion:

"This insurance does not apply:

" * * *

"(d) to property damage * * * (6) to the named
insured's products arising out of such products
or any part of such products * * *."

Safeco asks this Court to construe the language of the

exclusion by reading it in the alternative:

This insurance does not apply to (a) property

damage of the named insured's products <u>or</u> (b)

property damage arising out of such products or

any part of such products.

As so construed, the injury to the wheat fields obviously arose

out of Munroe's product, the seed, the exclusion is applicable,

and there is no coverage under the policy. Perhaps if the ex-

clusion were punctuated or phrased in another manner it would

have that effect. But, as written, the exclusion has reference

solely to property damage to the named insured's products.

By substituting the policy definitions for "property

damage" and "named insured's products", the exclusion reads:

This insurance does not apply to injury to or

destruction of tangible property to the goods

- 9 -

or products manufactured, sold, handled or distributed by the named insured or by others trading under his name including any container thereof arising out of such products or any part of such products.

The court in Northern Grain said, at page 368:

"Finally, St. Paul contends that irrespective of any 'injury to * * * property' which may conceivably exist, coverage is nevertheless precluded under the exclusion of 'injury to or destruction of * * * (3) any goods, products or containers thereof manufactured, sold, handled or distributed by the Insured * * *.' Thus St. Paul equates the wheat crop of Northern's customers with the seed wheat sold by Northern, and refuses to recognize a distinct and separate identity between the two.

"We refuse to accede to the argument that the wheat crop was merely the seed in changed form and therefore encompassed within the exclusionary clause. By virtue of the germination process involved in the production of wheat a transformation did, in fact, occur so as to constitute the wheat crop a separate and distinct entity from the original seed wheat.

"Considered in its proper perspective, the function of the exclusionary clause denying coverage of damages for 'injury to or destruction of * * * any goods, products or containers thereof manufactured, sold, handled or distributed by the Insured * * *' is clear. Such a provision denies coverage to an insured for damages occasioned to his own goods or work product by reason of its internal defectiveness. The exclusionary clause, however, has no reference to damage to property other than the insured's goods or products or other accidental loss resulting from the defective condition of the insured's work product." (Emphasis supplied.)

Although we have no knowledge of why exclusion (d)(6) was inserted in the instant policy, it appears likely that it was for the reason stated by the court in Northern Grain.

Safeco's third contention is that the district court erred in granting defendants' motion to strike from the amended complaint the allegations regarding the existence of a so-called "Misdelivery of Seed" endorsement.

The allegation which was stricken by the district court reads as follows:

"Plaintiff had available for inclusion in such a policy upon payment of an additional premium therefor its 'Misdelivery of Seed' endorsement, a copy of which is attached marked 'Exhibit B'. Defendant [D. E. Munroe,] did not pay for and did not receive such a 'Misdelivery of Seed' endorsement and the same is not a part of the contract of insurance entered between the parties."

There is no contention advanced by Safeco that Munroe was offered such an endorsement or was even aware of the existence of such an endorsement. Yet it is advocated by Safeco that this endorsement, or its absence, is evidence of the intention of the parties to the insurance contract.

Section 13-705, R.C.M. 1947, provides:

"When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this chapter."

This statute makes it clear that, in Montana, a contract is to be interpreted within its four corners and not by reference to extraneous matters, as Safeco would have this Court do. In Home Ins. Co. v. Pinski Bros., Inc., 156 Mont. 246, 258, 479 P.2d 274, we stated:

" * * * Where the policy is unambiguous, the terms and coverage of the policy must be determined by its language alone and extrinsic evidence is inadmissible to establish its meaning. Section 13-704, R.C.M. 1947; James v. Prudential Ins. Co., 131 Mont. 473, 312 P.2d 125, Kansas City Fire & Marine Ins. Co. v. Clark (D.C. Mont.), 217 F.Supp. 231 (1963) affirmed 9 Cir., 329 F.2d 647; Glacier Gen. Assur. Co. v. State Farm Insurance Co., 150 Mont. 452, 436 P.2d 533. * * *"

We hold that the policy provisions in issue were not ambiguous and that the district court properly struck the allegations in Safeco's amended complaint regarding the "Misdelivery of Seed" endorsement.

Finding coverage under the policy, Safeco's duty to defend the actions brought by Buchanan and Andersen & Hovland against Munroe follows from the language of the policy:

- 11 -

" * * * The company shall have the right and
duty to defend any suit against the insured
seeking damages on account of such bodily injury
or property damage * * *."

Safeco's fifth argument goes to the question of whether or not the district court erred in making its order allowing discovery proceedings to continue in the two basic actions pending the appeal of this action. However, since no discovery proceedings have taken place since this Court's order staying the same, this question is moot.

Because of the view we have taken of the foregoing issues, we deem it unnecessary to discuss any of the other issues raised by the parties.

The summary judgment of the district court is affirmed.

_Wesley Castles_
Justice

We concur:

_____
Chief Justice

_____
_John Conway Harrison_
_Frank B. Haswell_
Justices