[No. 1282-3.    Division Three.    July 16, 1975.]
GENERAL INSURANCE COMPANY OF AMERICA, *Appellant,* v.
GILBERT W. GAUGER *et al, Respondents.*

*C. E. Huppin* and *Morrison, Huppin, Ewing & Anderson,* for appellant.

*Norman D. Brock* and *Underwood, Campbell, Zellmer & Brock, P.S.,* for respondents.

GREEN, J.—This is a declaratory judgment action brought by General Insurance Company of America to determine coverage under a "Growers and Ranchers Insurance Policy" issued to Gilbert and Ethel Gauger. General Insurance appeals from the entry of summary judgment in favor of Gaugers.

In the spring of 1973, Gaugers sold some seed barley to Odessa Union Warehouse, representing it to be Unitan spring barley. Odessa, in turn, sold the seed to various farmers. In fact, the barley seed was a mixture of spring and winter varieties and when planted did not properly

head out or produce a normal crop, to the farmers' damage. Odessa settled and paid its customers' claims for damage and brought an action against Gaugers to recover the payment. Defense was tendered to General Insurance and this action followed.

The underlying question on appeal is whether the damage suffered by Odessa's customers constitutes "property damage" as defined in the policy. The answer to this question depends upon an interpretation of the following provisions of the policy:

1. LIABILITY COVERAGE
The company will pay *all damages* the insured is obligated to pay for liability imposed by law: (1) upon him; or (2) upon another, but assumed by him under a contract, because of bodily injury or *property damage* to which this insurance applies, caused by an occurrence.

. . .

DEFINITIONS

. . .

"damages" includes damages for . . . loss of use of property resulting from property damage;

. . .

"property damage" means injury to or destruction of *tangible* property; . . .

(Italics ours.)

Incorporating the definitional language into the relevant portions of the liability coverage provision, it would read as follows:

1. LIABILITY COVERAGE
The company will pay all damages, [including] damages for loss of use of property resulting from injury to or destruction of tangible property, the insured is obligated to pay for liability imposed by law upon him because of injury to or destruction of tangible property to which this insurance applies, caused by an occurrence.

General's primary contention is that the trial court erred when it determined that the action against Gaugers involved "property damage." General argues that the dam-

ages paid by Odessa to its customers were for crop loss and, like loss of profit, does not constitute "injury to or destruction of *tangible* property." (Italics ours.) We reject this contention and adopt the reasoning and holding in *Safeco Ins. Co. v. Munroe,* ...... Mont. ......, 527 P.2d 64 (1974).[1]

In *Safeco,* winter wheat was sold as spring wheat and the resulting actions against the seller of the wheat for damages became the subject of a declaratory judgment action to determine whether the claims were covered under an insurance policy identical to the one in this case. As here, *Safeco* contended that the claims were not injuries to "tangible" property. In disposing of this contention, the Montana court in *Safeco* stated, at page 68:

> We find this contention to be without merit. We find no error in and adopt the finding of fact No. 8 of the district court:
>
> "8. That if the claimants against Munroe as aforedescribed suffered any loss by virtue of having received and planted the wrong type of seed wheat, it follows, as a matter of common knowledge, that the land in which the seed wheat was planted would have been damaged in that said land would have lost a portion of its retained moisture, would have lost a portion of its retained fertilizer, weeds would have grown thereon where no crop had grown, erosion would have occurred, said land would have to have been recultivated in order to render it suitable for the planting of another crop of the same or similar nature, and that if little or no crop grew, the claimants would have received little or no compensation by virtue of having lost a crop, and would have suffered loss of use of their lands".

---

[1]In adopting the rationale of *Safeco Ins. Co. v. Munroe, supra,* we decline to follow the authorities relied upon by General: *Liberty Mut. Ins. Co. v. Consolidated Milk Producers' Ass'n,* 354 F. Supp. 879 (N.H. Dist. Ct. 1973); *Stevens Indus., Inc. v. Maryland Cas. Co.,* 391 F.2d 411 (5th Cir. 1968); *Escambia Chem. Corp. v. U.S. Fidelity & Guar. Co.,* 212 So.2d 884 (Fla. Dist. Ct. App. 1968); *St. Paul Mercury Ins. Co. v. Sugarland Indus., Inc.,* 406 S.W.2d 778 (Tex. Civ. App. 1966); *E.K. Hardison Seed Co. v. Continental Cas. Co.,* 56 Tenn. App. 644, 410 S.W.2d 729 (1966); *Geddes & Smith, Inc. v. Saint Paul-Mercury Indem. Co.,* 51 Cal. 2d 558, 334 P.2d 881 (1959).

. . . we find it to be beyond dispute that a Montana wheat field and the crop therein, is tangible property. The district court clearly found injury to the wheat fields and thus injury to tangible property.

Following this reasoning, we hold that the trial court correctly determined that the Odessa claim was based upon injury to "tangible" property.

■ Having found injury to tangible property, General's contention that crop loss is not covered by the policy must fail. In this contention, General confuses the injury to tangible property with the nature of the damages flowing therefrom. Crop loss is merely a measure of the damage, albeit intangible, flowing from the injury to tangible property and not, itself, the injury. As the court in *Safeco* said at page 68:

The plaintiff [*sic*], clear, unambiguous meaning of the language in the policy is that once it has been found that tangible property has been damaged, there is insurance coverage for all damages because the term damages is used without limitation and, in fact, is expanded to include damages for loss of use. The issue then becomes whether or not Safeco's policy language is sufficiently strong enough to exclude insurance coverage for consequential damages—loss of profits. *It might be that loss of profits is an item of intangible damage. However, it is of utmost importance to note that the policy does not, by any stretch of the imagination, require that there be tangible damage to tangible property.* Clearly, it was not Safeco's intention to exclude consequential damages or they would have said so in the policy.

(Italics ours.) This conclusion is further supported by *Labberton v. General Cas. Co. of America*, 53 Wn.2d 180, 332 P.2d 250 (1958); and *St. Paul Fire & Marine Ins. Co. v. Northern Grain Co.*, 365 F.2d 361 (8th Cir. 1966). Both of these cases endorse the principle that once the injury is covered by the policy, then the resulting damage is covered. In each of these cases, contrary to the position here urged by General, crop loss as a measure of damage was covered under the policy. The attempt by General to distinguish these cases on the ground that the term "property

damage" was not limited, as it is in the instant case, to *"tangible* property" is persuasively answered by the Montana court in *Safeco* at pages 68-69:

Safeco, in attempting to distinguish, among others, Wells Labberton v. General Casualty Co. of America, 53 Wash.2d 180, 332 P.2d 250, and St. Paul Fire & Marine Insurance Co. v. Northern Grain Co., 365 F.2d 361, 368, (8th Cir.), argues that the courts there were not faced with policy language limiting coverage to injury to "tangible" property. We deem it unnecessary to go into the factual bases or issues of those cases, noting merely that they were similar to the instant appeal and the losses were held covered by the policies. Because the policies in those cases covered injuries to "property" rather than injuries to "tangible property", Safeco reasons that those cases are not applicable. However, *Safeco's argument falls one step short of the mark. To determine whether each particular case is applicable or not, the case must be examined to .determine whether the injury involved was to tangible or intangible property. If that injury is to tangible property, then the addition of the word "tangible" to the definition of property would have no effect on the rule of the case. In each of the above cases, and in the instant appeal, the injury was to a wheat field and a wheat field is tangible property.*

(Italics ours.) In other words, there being injury to *tangible* property, any and all damages flowing therefrom and not expressly excluded by the policy are covered under the term "property damage" as that term is defined in the policy.

■ Finally, General contends that because the insured did not seek the option of purchasing a special rider for "misdelivery of seed," there was no intent by the parties to provide such coverage. We disagree. It is clear that General did not offer the misdelivery of seed endorsement to Gaugers, nor were they aware of the availability of such an endorsement. In rejecting General's contention, the trial judge properly noted in his memorandum opinion:

First, such an endorsement could be dreamed up after the fact for almost any set of circumstances. More important, had the insurer wanted to exclude misdelivery of

seed they could have done so in the policy. Re-inforcing this argument is the policy itself which under Section II, GROWERS AND RANCHERS LIABILITY, is found the language, "The following hazards are excluded therefrom"; thereafter, *no* exclusion is designated, although in the definition section "Products Hazards" is defined and would have been applicable to the circumstances of this case had it been designated as an exclusion.

In disposing of the same contention in *Safeco,* the court at page 70, stated the well recognized rule that:

"* * * Where the policy is unambiguous, the terms and coverage of the policy must be determined by its language alone and extrinsic evidence is inadmissible to establish its meaning.

The order of summary judgment in favor of defendants Gauger is affirmed.

McINTURFF, C.J., and MUNSON, J., concur.