200 N.J. Super. 319 (1984)
491 A.2d 729
GREAT AMERICAN INSURANCE CO., AN OHIO CORPORATION AUTHORIZED TO DO BUSINESS IN N.J., PLAINTIFFS-RESPONDENTS,
v.
LERMAN MOTORS, INC., T/A AUTO SPORT LTD., KERMIT GORDON, D/B/A BOUND BROOK APARTMENTS, DEFENDANTS, AND PUBLIC SERVICE MUTUAL INS. CO., A N.Y. CORPORATION AUTHORIZED TO DO BUSINESS IN N.J., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 1983.
Decided February 22, 1984.
*320 Before Judges ARD, MORTON I. GREENBERG and TRAUTWEIN.
Marc L. Dembling argued the cause for appellant (Lieb, Berlin & Kaplan, attorneys).
Michael Muscio argued the cause for respondent (Sarah J. Berman, on the brief).
Michael Muscio, for plaintiff.
David B. Rubin, for defendant Lerman Motors, Inc. (Rubin, Lerner & Rubin, attorneys).
Marc L. Dembling, for defendant Public Service Mutual Insurance Co. (Lieb, Berlin & Kaplan, attorneys).
PER CURIAM.
The judgment of February 23, 1982 is affirmed substantially for the reasons set forth in the comprehensive written opinion of Judge Gaynor dated December 24, 1981.

*321 APPENDIX

GREAT AMERICAN INSURANCE CO., a Ohio corporation authorized to do business in N.J., Plaintiff,

vs.

LERMAN MOTORS, INC., T/A AUTO SPORT LTD., KERMIT GORDON, D/B/A BOUND BROOK APARTMENTS, and PUBLIC SERVICE MUTUAL INS. CO., a N.Y. corporation authorized to do business in N.J., Defendants.

SUPERIOR COURT OF NEW JERSEY

LAW DIVISION  SOMERSET COUNTY

Docket No. L-49588-80

S-8128

December 24, 1981.
GAYNOR, J.S.C.
This declaratory judgment action involves the issue of whether a claim for business losses is covered by a liability policy insuring against all damages resulting from injury to or destruction of property. Such a question of coverage has not heretofore been judicially considered in New Jersey, although it has been the subject of litigation in several other jurisdictions. While in some cases it has been concluded that claims against the insured for loss of business or profits resulting from property damage are not within the liability coverage afforded by such a policy, the opposite view interpreting the policy as providing such coverage is a more acceptable conclusion, as it *322 makes an appropriate distinction between the injury insured against and the resulting damages and thereby accords with the reasonable expectation of the insured as to the extent of the indemnification furnished under the policy.
The matter is now before the Court on the return of an Order obtained by the plaintiff, Great American Insurance Company, hereinafter Great American, directing the defendant, Public Service Mutual Insurance Co., hereinafter Public, to show cause why judgment should not be granted declaring that a policy issued by Public covers claims being asserted against its insured for loss of business or profits arising because of fire damage to property.
As there is no dispute as to any material fact, it is appropriate that the matter be determined on a motion for summary judgment. R. 4:46-2. On April 27, 1977 a fire occurred in premises owned by the defendant, Kermit Gordon, d/b/a Bound Brook Apartments, a portion of which was occupied by the defendant, Lerman Motors, Inc., a new car dealership. As a result of the fire, Lerman Motors, Inc. sustained damage to tangible personal property and also suffered loss of business. Two suits were thereafter instituted by Lerman Motors, Inc. against Gordon to recover for such losses, one being a subrogation action and the other for claims in excess of any insurance coverage Lerman had in effect at the time of the loss. The trial of the subrogation action resulted in an adjusted verdict of $11,750, allocated between the property and business losses sustained by Lerman. The trial of the other action has been stayed pending the resolution of this declaratory judgment action.
At the time of the fire Gordon was insured by Public under a general liability policy with combined bodily injury and property damage limits of $500,000, and also by an "excess policy" issued by the plaintiff, Great American. Public disclaimed any liability for Lerman's claims based upon loss of business or profits, asserting that the policy coverage did not include indemnification *323 for this type of loss. The company also notified Gordon that, for the same reason, there would be no such coverage for any verdict obtained by Lerman in the remaining case, although it would defend the action on his behalf.
The policy issued by Public required it to pay on behalf of the insured all sums which he "shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence arising out of the ownership, maintenance or use of the insured premises...." "Property damage" is defined in the policy as "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."
The plaintiff contends that the claim for the loss of business or profits being asserted by Lerman Motors, Inc. is properly payable under the liability policy issued by the defendant company as a consequential loss flowing from the fire damage to the premises. It is argued that if the policy insures against the accident or occurrence, then all damages resulting therefrom are covered. The defendant, on the other hand, states that its responsibility under the policy does not extend to the claim for loss of profits as coverage is, by the terms of the policy, limited to physical damage to tangible property, and such coverage being so clearly expressed in the policy, it is not subject to a construction or interpretation that would extend its liability to claims which are other than claims for damages to tangible property.
The issue presented, therefore, pertains to the coverage afforded by the policy issued by Public, the question being whether or not the policy which indemnifies the insured against claims for losses of tangible personal property also includes *324 indemnification for losses of business or profits resulting from the accident or occurrence causing the property damage.
As indicated, the question has been the subject of divergent opinions in other jurisdictions. While certain cases hold that liability coverage includes a loss of profits resulting from the occurrence which caused the property damage, General Ins. Co. of America v. Gauger, 13 Wash. App. 928, 538 P.2d 563 (1975); Safeco Ins. Co. v. Monroe, 165 Mont. 185, 527 P.2d 64 (1974); St. Paul Fire & Marine Ins. Co. v. Northern Grain Co., 365 F.2d 361 (8 Cir.1966); others conclude that such coverage is limited to damages to tangible property and thus would not include loss of profits. Liberty Mutual Ins. Co. v. Consol. Milk Producers Assn., 354 F. Supp. 879 (Dist.Ct., N.H., 1973); Geddes and Smith, Inc. v. St. Paul Mercury Ind. Co., 51 Cal.2d 558, 334 P.2d 881 (1959); St. Paul Mercury Ind. Co. v. Sugarland Industries, Inc., 406 S.W.2d 778 (Civ.App., Tex., 1966); E.K. Hardison Seed Co. v. Continental Cas. Co., 56 Tenn. App. 644, 410 S.W.2d 729 (1966). See also Escambia Chem. Corp. v. U.S. Fidelity and Guaranty Co., 212 So.2d 884 (D.Ct., App., Fla., 1968).
The courts favoring the plaintiff's position adopt the principle that once the injury is covered by the policy then all the resulting damages are covered, including consequential damages. A differentiation is made between the injury and the damages flowing therefrom, with loss of profits being considered as merely one measure of the damages resulting from the injury to tangible property. The rationale of these decisions is expressed in General Ins. Co. of America v. Gauger, supra, in the following manner:
Having found injury to tangible property, General's contention that crop loss is not covered by the policy must fail. In this contention, General confuses the injury to tangible property with the nature of the damages flowing therefrom. Crop loss is merely a measure of the damage, albeit intangible, flowing from the injury to tangible property and not, itself, the injury. As the court in Safeco said at page 68:
The plaintiff [sic], clear, unambiguous meaning of the language in the policy is that once it has been found that tangible property has been damaged, there is *325 insurance coverage for all damages because the term damages is used without limitation and, in fact, is expanded to include damages for loss of use. The issue then becomes whether or not Safeco's policy language is sufficiently strong enough to exclude insurance coverage for consequential damages  loss of profits. It might be that loss of profits is an item of intangible damage. However, it is of utmost importance to note that the policy does not, by any stretch of the imagination, require that there be tangible damage to tangible property. Clearly it was not Safeco's intention to exclude consequential damages or they would have said so in the policy. [General Ins. Co. of America, supra, 538 P.2d at 566.]
The opposite view is based upon the conclusion that, by virtue of the coverage provisions of such a liability policy read in conjunction with the exclusions applicable thereto, property damage is intended to refer only to injury to physical or tangible property. It is considered that the natural and ordinary meaning of "property damage" would not include business losses, and there being no ambiguity, the coverage provisions do not permit of an interpretation differing from the plain meaning of the terms. The reasoning in support of this position is set forth in the following portion of the decision in Geddes and Smith, Inc. v. St. Paul Mercury Ind., Co., supra:
Plaintiff's judgment against the insured was not limited to such damages [diminution in market value of houses in which defective doors were installed or cost of removing defective doors plus any loss from deprival of use whichever is the lesser]. In addition to costs of removal of the doors and loss of use of the houses, it included the other costs of handling the defective doors and their replacements, loss of profits, and loss of goodwill. Plaintiff contends, however, that these additional items of damages constituted damages to its business and goodwill and were therefore damages "because of injury to or destruction of property." We cannot agree with this contention. When coverage C is read in the light of the exclusions applicable thereto, it is clear that the word property refers to physical or tangible property. Thus it is such property, not goodwill of a business entity, that is ordinarily thought of as the subject of use, and it is to damage to such property that all of the exclusions are directed. Any breach of contract may harm the business of the injured party, and if sufficiently serious, may affect his goodwill. Such damages, however, are not commonly thought of as injuries to or destruction of property within the meaning of a public liability insurance policy. Defendant did not undertake to insure against all breaches of contract caused by accident. It required an injury to or destruction of property and excluded injury to or destruction of goods or products sold by the insured. The significance of this exclusion would be obvious had the defects appeared before any of the doors had been installed. In such event it could not be seriously contended that an injury to property *326 other than the doors had occurred within the meaning of the policy even though plaintiff's inability to use them seriously interfered with its business and injured its goodwill. Such damages are no less outside the coverage of the policy because there was also damage to the houses.
A construction which excludes consequential losses from coverage under a general liability policy is not a reasonable interpretation of a policy which insures against all damages because of property damage, nor is it one which comports with the reasonable expectation of an average lay purchaser of insurance as to the coverage afforded by the policy. Where the controlling language of an insurance policy is susceptible to two interpretations, one favorable to the insured and the other to the insurer, the interpretation sustaining coverage should be applied. Any ambiguity is to be resolved in favor of the insured. Butler v. Bonner & Barnewall, 56 N.J. 567 (1970); Aetna Ins. Co. v. Weiss, 174 N.J. Super. 292 (App.Div. 1980). Additionally, the terms of an insurance contract should be read to accord with the reasonable expectation of the purchaser to the end that coverage is afforded to the full extent that any fair interpretation will allow. Corcoran v. Hartford Fire Ins. Co., 132 N.J. Super. 234 (App.Div. 1975).
Interpolating the definitional language of the subject policy into the pertinent portion of the coverage provision, it would read as follows:
The company will pay all damages, including damages for loss of use of property, resulting from injury to or destruction of tangible property, which the insured shall become legally obligated to pay because of injury to or destruction of tangible property to which the insurance applies, caused by an occurrence.
Such a reading of the insurance contract more clearly expresses the indemnification provided by the policy. The obligation to pay all damages for the loss of use of property resulting from its injury or destruction is inclusive of consequential damages, including loss of profits or business, flowing from the loss. This construction properly distinguishes between the injury insured against and the resulting damage. While consequential damages could have been precluded from coverage by an express provision in the policy, no such exclusion was included. *327 An interpretation of the coverage provisions of Public's policy which affords indemnification to the insured for claims of loss of profit, suffered as a result of a peril insured against, is in accord with the reasonable expectation of a purchaser of a policy which insures against all claims for damage to or loss of use of property, and is an appropriate resolution of any ambiguity in the coverage provisions of the policy.
Accordingly, judgment will be granted declaring that the policy issued by Public covers the claims asserted by Lerman for loss of business or profits. An appropriate form of judgment may be submitted.