[No. 2467-3.   Division Three.   January 30, 1979.]

YAKIMA CEMENT PRODUCTS COMPANY, *Appellant,* v. GREAT
AMERICAN INSURANCE COMPANY, *Respondent.*

*Halverson, Applegate & McDonald* and *Walter G. Meyer, Jr.,* for appellant.

*Nashem, Prediletto, Schussler & Halpin* and *Don W. Schussler,* for respondent.

McINTURFF, J.—This litigation involves the construction of exclusionary language contained in a policy of liability insurance issued by the defendant, Great American Insurance Company (Great American), to the plaintiff, Yakima Cement Products Company (Yakima).

Yakima is a manufacturer of concrete construction products. In July 1974 it contracted with F. S. Jones Construction Co. (Jones) for the manufacture of precast concrete panels which were to serve as the exterior walls of a building being constructed by Jones under its contract with the Army Corps of Engineers. Yakima agreed to deliver 81 panels to the jobsite located 15 miles from its plant. Sixty–three panels were manufactured for use in the operations building and 18 panels were manufactured for use in the support building located at the Yakima Firing Center. The panels were installed in the buildings by Jones, acting through another subcontractor.

Following installation, it was discovered that 38 of the panels were defective in several respects: the panels were not uniform in size; they varied in thickness; and the exposed aggregate did not match the appearance of the sample panel. The defects were caused by negligent and defective manufacture by Yakima. The panels were rejected by the Army Corps of Engineers.

Yakima was not aware of the errors in manufacture at the time of delivery. Thereafter, however, it took immediate steps to remedy the defects. Corrections were made while the panels were in place with the exception of a few

panels which had to be removed to be repaired or replaced. These corrections delayed construction, which resulted in a substantial increase in costs for labor and materials. In addition, the roof was damaged due to weather exposure. Yakima made the repairs at its own expense, no part of which is claimed in this action.

A dispute arose between Yakima and Jones. Jones refused to pay on the contract, claiming the damages it suffered exceeded the contract price. Yakima brought suit to recover on the contract and Jones counterclaimed for the damage to the roof and the resulting expenses due to delay in completion of the project. Yakima tendered the counterclaim to its insurer, Great American. The tender was refused on the ground that the counterclaim alleged a breach of contract and insurance coverage was available only for damages caused by an "occurrence."

Ultimately, Yakima and Jones negotiated a settlement whereby Yakima was awarded $107,974.17 on its contract and Jones was awarded $69,474.17 on its counterclaim. Jones paid Yakima $38,500—the difference between the contract price and the counterclaim. Yakima then filed this action against Great American to recover the $69,474.17 judgment entered against it on the Jones counterclaim.[1]

The trial court held that there was an "occurrence" within the terms of the policy. However, exclusion (n), known as the "sistership provision," precluded recovery. The court went on to hold that except for the exclusion, there was property damage to the roof of the building to which the panels were attached in the amount of $26,000. Consequential damages due to delay of $43,474.17 were found not to come within the policy definition of property damage.

Great American denies liability on the basis that (1) there was no accident as required by the policy; (2) exclusion (n), the sistership provision, precludes recovery for

---

[1]This case is here for the second time following our decision in *Yakima Cement Prods. Co. v. Great Am. Ins. Co.,* 14 Wn. App. 557, 544 P.2d 763 (1975).

damages incident to the withdrawal of the named insured's product; (3) there was no property damage; and (4) there is no substantial evidence to support the computation of damages.

## OCCURRENCE

■ Initially, we must determine whether the misfabrication of the concrete panels, necessitating their repair and/or removal, is an "occurrence" under the terms of this liability insurance policy. The insurance policy obligates Great American:

> To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of property damage caused by an occurrence.

The policy defines an occurrence as:

> An accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured . . .

We have defined an accident to mean: "(a) an undesigned, sudden, and unexpected event; (b) a mishap resulting in injury to a person or damage to a thing."[2] An occurrence has been defined as: "An incident or event, especially one that happens without being designed or expected."[3]

A review of decisions from other jurisdictions indicates that courts have taken a liberal approach in interpreting the term accident.[4] It has been said that the term accident

---

[2]*Viking Automatic Sprinkler Co. v. Pacific Indem. Co.*, 19 Wn.2d 294, 297, 142 P.2d 394 (1943).

[3]*Gruol Constr. Co., Inc. v. Insurance Co. of N. America*, 11 Wn. App. 632, 634, 524 P.2d 427 (1974); *Truck Ins. Exch. v. Rohde*, 49 Wn.2d 465, 469, 303 P.2d 659, 55 A.L.R.2d 1288 (1956).

[4]*See St. Paul Fire & Marine Ins. Co. v. Northern Grain Co.*, 365 F.2d 361 (8th Cir. 1966) (sale of less productive wheat); *Koehring Co. v. American Auto. Ins. Co.*, 353 F.2d 993 (7th Cir. 1965) (breakdown of hydraulic cylinders of cement mixers constituted an accident); *Bundy Tubing Co. v. Royal Indem. Co.*, 298 F.2d 151 (6th Cir. 1962) (defective tubing in heating system); *Ritchie v. Anchor Cas. Co.*, 135 Cal. App. 2d 245, 286 P.2d 1000 (1955) (damages arising from the use of

must be defined in the context of the product being manufactured by the insured and the kind of losses sustainable in the event of a defect in manufacture. "[T]he hazards to be insured against are the mishaps or unintended consequence that can result from the use of the product." *Ramco, Inc. v. Pacific Ins. Co.,* 249 Ore. 666, 439 P.2d 1002, 1005 (1968).

In the context of liability insurance policies, the word "accident" should not be construed as excluding claims involving negligence or breach of warranty; otherwise, little protection would be given to the insured. *Bundy Tubing Co. v. Royal Indem. Co.,* 298 F.2d 151, 153 (6th Cir. 1962). "[I]nsurance policies should be construed to maximize coverage in a fashion consonant with fairness to the insurer."[5] Great American cites *Evans v. Metropolitan Life Ins. Co.,* 26 Wn.2d 594, 174 P.2d 961 (1946), which we find distinguishable. The *Evans* court was concerned with construing the term "accidental" within the context of an accidental death policy. Here, we are dealing with an accident or occurrence within the context of a products liability policy.

In summary, an occurrence requires (1) an accident, (2) resulting property damage, (3) neither expected nor intended by the insured. Here, the misfabrication of the

---

rancid oil held to be caused by accident); *Geddes & Smith, Inc. v. St. Paul–Mercury Indem. Co.,* 51 Cal. 2d 558, 334 P.2d 881 (1951) (defects in aluminum doors which developed after they were installed held to constitute an accident); *Shelby Mut. Ins. Co. v. Ferber Sheet Metal Works, Inc.,* 156 So. 2d 748 (Fla. Dist. Ct. App. 1963) (damage to church organ 8 months after completion of roofing and waterproofing work because of deficiencies in such work was an accident); *Hauenstein v. St. Paul–Mercury Indem. Co.,* 242 Minn. 354, 65 N.W.2d 122 (1954) (holding that property damage to buildings caused by application of defective plaster was caused by accident); *Penley v. Gulf Ins. Co.,* 414 P.2d 305 (Okla. 1966) (damage to motor truck resulting from improper use of gasoline instead of diesel fuel held to constitute accident); *American Employers Ins. Co. v. Knox–Tenn Equip. Co.,* 52 Tenn. App. 643, 377 S.W.2d 573 (1964) (damage to floor as result of using drill bit that was too large).

[5]*Farmers Ins. Co. v. U.S.F. & G. Co.,* 13 Wn. App. 836, 842, 537 P.2d 839 (1975); *accord, Oregon Auto. Ins. Co. v. Salzberg,* 85 Wn.2d 372, 376–77, 535 P.2d 816 (1975).

panels was the result of negligence on the part of Yakima. The trial court found that Yakima was unaware of the defects in the panels at the time of delivery. The subsequent rejection of the panels and resulting property damage to the roof of the operations building was unintended and unforeseen. Thus, we affirm the trial court's conclusion that there was "an occurrence" within the terms of the Great American policy.

### Sistership Exclusion

Next, we are asked to consider the applicability of exclusion (n), known as the sistership provision. The exclusion provides:

This policy does not apply:

. . .

(n) under Coverages B and D, to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

The term "sistership" was derived from an incident in the aircraft industry in which one plane crashed and its sisterships were thereafter grounded and recalled by the manufacturer in order to correct a common defect which had caused the crash.[6]

The rationale behind the sistership exclusion has been explained as follows:

The recall of equipment or parts discovered to have a common fault involve expenses incurred to prevent accidents which have not occurred. While the insurance covers damages for bodily injuries and property damage caused by the product that failed, it was never intended

---

[6]*Bigelow–Liptak Corp. v. Continental Ins. Co.*, 417 F. Supp. 1276, 1281 (E.D. Mich. 1976); *Arcos Corp. v. American Mut. Liab. Ins. Co.*, 350 F. Supp. 380, 384 (E.D. Pa. 1972); *Gulf Ins. Co. v. Parker Prods., Inc.*, 498 S.W.2d 676, 678 (Tex. 1973).

that the insurer would be saddled with the cost of preventing other failures, any more than it was intended that the insurer would pay the cost of preventing the first failure if the product had been discovered to be in a dangerous condition before the occurrence.

3 R. Long, *Law of Liability Insurance*, § 15, App. at 47 (1966).

Thus, the insurer is not liable for the cost of preventative or curative action taken by its insured. Instead, the insured must bear the cost of withdrawing a product from the market in situations in which a danger is apprehended although no accident has occurred. *Wyoming Sawmills, Inc. v. Transportation Ins. Co.*, 282 Ore. 401, 578 P.2d 1253 (1978).

■ We have not previously interpreted the language of the sistership exclusion; however, cases from other jurisdictions suggest its inapplicability here. In *Arcos Corporation v. American Mut. Liab. Ins. Co.*, 350 F. Supp. 380 (E.D. Pa. 1972), the insurer was held liable for expenses incurred in ripping out and rewelding the joints on a nuclear powered submarine when the insured supplied defective weld wire. In *Wyoming Sawmills, Inc.*, the insurer supplied defective 2 x 4 studs which were incorporated into a building. The court held that the insurance policy provided coverage for expenses attributable to tearing out and putting back parts of the building which were damaged in the course of replacing the studs. In *Bigelow–Liptak Corp.*, the insured had a contract to install refractory lining in a pressure vessel. The lining installed was not of the desired thickness and the insured was required to replace it. In the course of removing the lining, the insured damaged the pressure vessel, which necessitated extensive repairs. These repairs were also covered by Bigelow's insurance policy despite claims by the insurer as to the applicability of the sistership exclusion.[7]

[7]*See also Ohio Cas. Ins. Co. v. Terrace Enterprises, Inc.*, 260 N.W.2d 450, 455 (Minn. 1977) (sistership provision did not preclude recovery of damages sustained due to delay in opening apartment building as a result of damages due to settling

Great American calls our attention to *Hamilton Die Cast, Inc. v. United States Fidelity & Guar. Co.,* 508 F.2d 417 (7th Cir. 1975), for its interpretation of the sistership exclusion. There, the insured supplied its customer with defective tennis racket frames and the customer was required to withdraw all of its completed rackets from the commercial market. The sistership exclusion was held to apply and coverage was denied. However, *Hamilton* is distinguishable. First, a product—tennis rackets—of which the insured's product—racket frames—formed a part, was withdrawn from the commercial market. Secondly, the inclusion of the defective frames did not result in property damage; rather, the customer's claim was for lost profits and injury to reputation. Thirdly, the court held there was no "occurrence" within the meaning of the policy.

In contrast to *Hamilton,* here, the panels were not withdrawn from the market. Although the record shows that a small number of panels were taken down, repaired and/or replaced, there was no product recall within the contemplation of the sistership exclusion, and it would be hypertechnical to hold otherwise. Exclusionary clauses are to be strictly construed against the insurer.[8] In addition, as we have already determined, the misfabrication of the panels was an "occurrence." Finally, unlike *Hamilton,* there was

---

caused by the insured's failure to adequately backfill and protect soil and concrete from the cold); *Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.,* 34 N.Y.2d 356, 314 N.E.2d 37, 357 N.Y.S.2d 705, 707 (1974) (products liability insurance policy afforded coverage to insured, noodle manufacturer, for its liability to soup company for soup company's expenses in withdrawing soup from the market because of contaminated noodles supplied by the insured); *Gulf Ins. Co. v. Parker Prods., Inc.,* 498 S.W.2d 676, 678 (Tex. 1973) (sistership provision did not exclude coverage for insured's liability to ice cream manufacturer when ice cream was rendered unfit for consumption because insured's flavoring contained paper which was mixed into the ice cream).

[8]*Truck Ins. Exch. v. Aetna Cas. & Sur. Co.,* 13 Wn. App. 775, 778, 538 P.2d 529 (1975); *Dickson v. United States Fidelity & Guar. Co.,* 77 Wn.2d 785, 789, 466 P.2d 515 (1970); *Rowland Constr. Co. v. St. Paul Fire & Marine Ins. Co.,* 72 Wn.2d 682, 688, 434 P.2d 725 (1967); *Labberton v. General Cas. Co. of America,* 53 Wn.2d 180, 182, 332 P.2d 250 (1958).

property damage to the building—an issue which we will discuss below.[9]

The sistership exclusion has no application to the facts in this case.

That provision applies only if the product or property of which it is a part is "withdrawn from the market or from use" by the insured, and even in such situations, the policy still covers damages caused by the product that failed.

*Arcos Corp. v. American Mut. Liab. Ins. Co., supra* at 385. Here, Yakima makes no claim of damages for the withdrawal or loss of use of its product. Yakima made the repairs to the panels at its own expense. Instead, the disputed claim concerns the $69,474.17 judgment which Jones was awarded against Yakima because of property damage incident to the misfabrication of the concrete panels. We are dealing here with repair costs to the operations building resulting from an accident. *See Bigelow–Liptak Corp. v. Continental Ins. Co.*, 417 F. Supp. 1276, 1278 (E.D. Mich. 1976). Thus, the sistership provision does not preclude recovery in this instance.

## PROPERTY DAMAGE

Next, we must determine the extent of insurance coverage which leads us to the question of what constitutes "property damage." The Great American policy defines property damage as, "injury to or destruction of *tangible* property." (Italics ours.) Yakima contends there was damage to the operations building itself when the defective panels were erected and all other damages claimed were consequential to that tangible damage. On the other hand, Great American argues that there has been no damage to

---

[9]We also note that the *Hamilton* case represents one side in a split opinion among several jurisdictions as to whether withdrawals by an insured's customer comes within the exclusion. In *Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*, 34 N.Y.2d 356, 357 N.Y.S.2d 705, 707 (1974), and *Parker Prods., Inc. v. Gulf Ins. Co.*, 498 S.W.2d 676 (Tex. 1973), the exclusion was held to relate to withdrawal and recall of defective products by the named insured only and did not extend to withdrawal and recall of defective products by a third–party customer.

tangible property. The panels were withdrawn without damage to the finished product, and Yakima's claim relates solely to added expenses incurred due to delay in completion of the project.

■ *Hauenstein v. St. Paul–Mercury Indem. Co.,* 242 Minn. 354, 65 N.W.2d 122, 125 (1954), and its progeny[10] have given a broad interpretation to the term "property damage" in the context of insurance contracts. In *Hauenstein,* the court held that the mere presence of defective plaster on the walls and ceiling of a building reduced its market value and therefore constituted property damage within the terms of an insurance policy. This was true although no physical damage otherwise occurred and despite the fact that the plaster could be removed without damage to the building.

Here, Yakima supplied defective concrete panels which were installed in the operations building. According to the reasoning in *Hauenstein,* the value of the building was diminished by the incorporation of the defective panels. We also note that there was additional tangible damage to the roof during the time in which Yakima was making repairs to the panels. The roof became rusted due to exposure. Thus, the building was damaged by incorporation of the insured's product. The trial court found that but for the sistership exclusion there was property damage in the amount of $26,000. Since we have found the exclusion inapplicable, the $26,000 sum, representing damage to the roof, is recoverable by the insured.

---

[10]*Goodyear Rubber & Supply Co. v. Great Am. Ins. Co.,* 471 F.2d 1343 (9th Cir. 1973); *Western Cas. & Sur. Co. v. Polar Panel Co.,* 457 F.2d 957 (8th Cir. 1972); *Arcos Corp. v. American Mut. Liab. Ins. Co.,* 350 F. Supp. 380 (E.D. Pa. 1972); *Geddes & Smith, Inc. v. St. Paul–Mercury Indem. Co.,* 51 Cal. 2d 558, 334 P.2d 881 (1959); *United States Fidelity & Guar. Co. v. American Ins. Co.,* ___ Ind. App. ___, 345 N.E.2d 267 (1976); *United States Fidelity & Guar. Co. v. Nevada Cement Co.,* 561 P.2d 1335 (Nev. 1977); *Dakota Block Co. v. Western Cas. & Sur. Co.,* 81 S.D. 213, 132 N.W.2d 826 (1965). *Contra, Hamilton Die Cast, Inc. v. United States Fidelity & Guar. Co.,* 508 F.2d 417 (7th Cir. 1975); *Hartford Accident & Indem. Co. v. Olson Bros., Inc.,* 187 Neb. 179, 188 N.W.2d 699 (1971).

### Consequential Damages

The trial court held that the damage claim of $43,474.17 did not constitute "property damage" within the meaning of the Great American policy. Specifically, the damages included:

> Other costs and expenses incurred by Jones due to increased costs incurred by its subcontractors and by it directly due to delays in the construction project, including increased rental charges, increased costs of labor, increased costs of materials and increased costs of testing all in the amount of $43,474.17.

Finding of fact No. 9(b). Great American argues that these expenses incident to delay are not "injury to or damage to *tangible* property." (Italics ours.)

Having found injury to tangible property in the form of physical damage to the roof, Great American's contention that consequential damages are not covered by the policy must fail. The policy does not require that there be tangible damage to tangible property. Consequential damages are not specifically excluded. As the court in *Safeco Ins. Co. v. Munroe,* 165 Mont. 185, 527 P.2d 64, 68 (1974), stated:

> The . . . clear, unambiguous meaning of the language in the policy is that once it has been found that tangible property has been damaged, there is insurance coverage for all damages because the term damages is used without limitation . . .

Thus, once there is injury to tangible property, Yakima was entitled to recover all other damages naturally flowing from that injury whether tangible or intangible. *General Ins. Co. of America v. Gauger,* 13 Wn. App. 928, 931, 538 P.2d 563 (1975). Therefore, the sum of $43,474.17, representing consequential damages, is also recoverable by the insured.

■ Finally, Great American challenges the accuracy of the evidence to support the damage award.

> [W]here there is no uncertainty as to the existence of substantial damages or as to causation, recovery of substantial damages is not to be denied merely because the extent or amount thereof cannot be ascertained with

mathematical precision, provided the evidence is sufficient to afford a reasonable basis for estimating loss. *Jacqueline's Washington, Inc. v. Mercantile Stores Co.*, 80 Wn.2d 784, 786, 498 P.2d 870 (1972). The evidence consisted of the opinion testimony of Mr. Jones, sole stockholder of F. S. Jones Construction Co., and William B. Douglas, owner and vice–president of Yakima. While neither witness was able to give precise figures regarding the damages incurred, the amounts arrived at were the product of extensive negotiation between Yakima and Jones. Mr. Jones was a disinterested witness. Both witnesses spoke from personal knowledge. While Great American complains of the lack of documentation, it offered no evidence to contradict the amounts claimed as damages. For these reasons, we believe there was substantial evidence to support the finding with regard to the damages.[11]

In sum, we hold (1) the negligent manufacture of the concrete panels and resulting property damage constituted an "occurrence"; (2) the sistership exclusion does not apply when no claim is made for the withdrawal or loss of use of the product by the insured; (3) the property damage to the roof of the operations building and the consequential damages incident to delay are recoverable by the insured; and (4) there was substantial evidence to support the damage award.

The judgment of the Superior Court is affirmed in part and reversed in part.

GREEN, C.J., and MUNSON, J., concur.

Reconsideration denied March 14, 1979.

Review granted by Supreme Court June 1, 1979.

---

[11]*Burkheimer v. Thrifty Inv. Co.*, 12 Wn. App. 924, 928, 533 P.2d 449 (1965); *Long v. T–H Trucking Co.*, 4 Wn. App. 922, 926, 486 P.2d 300 (1971).