Hillsborough
No. 82-383

DAVID H. MCALLISTER

v.

PEERLESS INSURANCE COMPANY

April 9, 1984

*Ladd Law Offices*, of Hollis (*William M. Ladd* on the brief and orally), for the plaintiff.

*Devine, Millimet, Stahl & Branch P.A.*, of Manchester (*Lee C. Nyquist* on the brief and orally), for the defendant.

SOUTER, J. This is an action for declaratory judgment under RSA 491:22 to resolve a disputed claim for coverage under an insurance policy. In 1978 the plaintiff began to conduct a landscaping and excavating business. He met with an agent of the defendant to

obtain insurance coverage. The parties disagree over the details of the conversation between the plaintiff and the agent, but it is undisputed that each party understood that the defendant would issue to the plaintiff a comprehensive general liability policy with completed operations coverage. The defendant issued such a policy, but failed to deliver to the plaintiff a set of documents that included all the written terms governing the coverage.

Through the agent, the defendant did deliver a so-called deck sheet, which normally would have functioned as a cover or binder for written endorsements. The deck sheet identified the parties, bore some notations indicating coverage, and set out various standard definitions and conditions. It did not include language generally granting coverage, but it did include a definition of "completed operations hazard."

In 1979 Michael Finkelstein hired the plaintiff to landscape his property and to construct a leach field on it. In 1980 Mr. Finkelstein brought action against the plaintiff for breaches of contract, claiming faulty workmanship in constructing the leach field and in performing the landscaping. Mr. Finkelstein sought damages to pay for correcting the allegedly defective work. He did not claim that such defects had caused damage to any other property than the work product, nor did he claim any damage to the work product other than the defective workmanship.

The plaintiff brought the present action to determine coverage for the liability asserted in the underlying action brought by Mr. Finkelstein. Following trial, the Master (*R. Peter Shapiro*, Esq.) concluded that there was no coverage, and the Superior Court (*Goode*, J.) accordingly entered a decree for the defendant. We affirm.

The plaintiff claims that he is entitled to coverage for any liability for failure to perform in accordance with his contractual obligations. He rests his claim on two grounds: his dealings directly with the agent and the terms of the policy itself.

The master found that the plaintiff had discussed the insurance requirements of his business with an acquaintance, and that by the time he met with the agent, he understood that he ought to obtain general liability and completed operations coverage. The master also found that neither the plaintiff nor the agent definitely recalled any representations the agent made about the coverage the defendant would provide. He found the agent had made no representation that coverage would be provided for liability of the sort asserted by Mr. Finkelstein, and he concluded that the agent's conversation with the plaintiff did not give rise to any obligation to provide such coverage.

■■ We will sustain the master's findings of fact if there was evidence on which a reasonable person could have found as he did. *U.S. Fidelity & Guaranty Co., Inc. v. Johnson Shoes, Inc.*, 123 N.H. 148, 153, 461 A.2d 85, 88 (1983). Judged on this standard, the master's findings must stand. It is true that the plaintiff did testify that as a result of his conversation with the agent he understood that the insurance company would pay the cost of correcting substandard work. But the plaintiff also admitted that he had no recollection that the agent had said the plaintiff would have "warranty insurance," or "guaranteed [sic] insurance," and no memory that the agent "ever even mentioned anything at all about coverage for faulty workmanship."

No further references to the testimony are needed to demonstrate that there was a sufficient evidentiary basis for the master's findings. Since the findings must be sustained, there is no occasion to apply the rule that prior dealings between insured and insurer can lead to enforceable expectations of coverage. *See Robbins Auto Parts, Inc. v. Granite State Ins. Co.*, 121 N.H. 760, 762–63, 435 A.2d 507, 508 (1981).

The plaintiff also claims coverage based on the terms of the policy. He argues that in construing those terms we should hold that the defendant's failure to deliver complete policy terms estops it to claim that any policy exclusions limit coverage, and he urges that any ambiguity in policy terms be construed against the defendant. We do not consider these claims about the application of estoppel and the resolution of ambiguity, because nothing in the policy language that was or should have been delivered could give rise to the coverage that the plaintiff seeks.

In considering the plaintiff's claim based on the terms of the policy, we look first to those terms set out on the deck sheet, the one document that was delivered to the plaintiff. Although the deck sheet did not include the general grant of liability coverage, it did include the definition of "completed operations hazard." Since it is undisputed that the insurance to be provided included coverage for liability arising out of completed operations, we look to that definition to determine whether completed operations coverage extends to claims of faulty workmanship. The portion of the definition that concerns us provides coverage by reference to liability for "property damage arising out of operations . . . but only if the . . . property damage occurs after such operations have been completed or abandoned."

■ Two portions of this language make it clear that liability for faulty workmanship is not the subject of coverage for completed

operations. First, it is clear from the language that the property damage giving rise to liability must take place after the completion of the operation. To determine the time when the damage is alleged to have occurred, we look to the declarations in the underlying action. *Lumbermen's &c. Co. v. McCarthy*, 90 N.H. 320, 321, 8 A.2d 750, 751 (1939). The claims for faulty workmanship as set out in those declarations are claims for defects in existence by the time the work was completed. The evidence of faulty workmanship may well have appeared only after completion, when effluent failed to disperse and grass died. But the claim in each instance before us remains a claim to correct a defect in workmanship. Such a defect is complete when the work is complete, and thus cannot give rise to liability covered under the quoted language of the policy.

■ A second element of that language also indicates that there is no coverage. The property damage in question must "occur" after completion. The deck sheet defines "occurrence" in the standard fashion as "an accident, including continuous or repeated exposure to conditions, which results in property damage." Since the context does not indicate different definitions for the noun and verb forms, no property damage in question can "occur" without such accident or exposure. *See Williams v. Aetna Casualty & Surety Co.*, 151 N.J. Super. 68, 376 A.2d 562 (1977).

The fortuity implied by reference to accident or exposure is not what is commonly meant by a failure of workmanship. *Hull v. Berkshire Mut. Ins. Co.*, 121 N.H. 230, 427 A.2d 523 (1981); Tinker, *Comprehensive General Liability Insurance—Perspective and Overview*, 25 FED'N. INS. COUNS. Q. 217, 231 (1975). The master therefore rightly concluded that the declarations in the underlying action allege no occurrence. Despite proper deference, then, to the reasonable expectations of the policyholder, *Town of Epping v. St. Paul Fire & Marine Ins. Co.*, 122 N.H. 248, 252, 444 A.2d 496, 498 (1982), we are unable to find in the quoted policy language a reasonable basis to expect coverage for defective workmanship.

■ We reach the same result if we extend our consideration of the language of the policy to the general grant of coverage customarily used in general liability policies. The defendant did not deliver a written statement of this term in this case, but even if delivered it would have provided no coverage on a claim of defective workmanship.

The evidence at trial included a copy of the general coverage provision that the defendant should have delivered. Its pertinent language would obligate the defendant to pay damages arising out of "property damage to which this insurance applies, caused by an

occurrence." This general provision is thus equivalent to the language quoted from the definition of "completed operations hazard" in providing coverage only when the damage results from an occurrence, and our earlier discussion of the nature of an occurrence applies with equal force here. In fact, the holding in *Hull v. Berkshire Mutual Insurance Co.*, 121 N.H. 230, 427 A.2d 523 (1981), was that a general grant of coverage identical to the general coverage provision here does not insure against liability for the cost of correcting defective work.

The plaintiff seeks to distinguish *Hull* as a case for "money damages" for "unaesthetic work, an intangible." But *Hull* did not turn on the nature of the relief sought in the underlying action, or on the visual perceptibility of the defect. Rather, we held there that defective work, standing alone, did not result from an occurrence, and indeed was not property damaged within the meaning of the policy. The holding in *Hull* is squarely applicable to the present case, whether we consider the requirement of occurrence in the general grant of coverage or the same requirement in the terms relating to completed operations.

The plaintiff further seeks to avoid the precedent of *Hull*, and the analysis on which it rested, by invoking *Commercial Union Assurance Cos. v. Gollan*, 118 N.H. 744, 394 A.2d 839 (1978). That latter case is inapposite here. The record in that case indicates that the parties had stipulated that the only issue to be decided was whether certain policy exclusions negated coverage, and the opinion was concerned solely with resolving what was held to be ambiguity created by the exclusions in question. In the absence of such a stipulation, it is not appropriate to consider exclusions unless coverage has first been found. In the instant case, and in *Hull*, it is clear that the policy terms granting coverage provide none against the liability asserted in the underlying actions. For the same reason, we do not reach the plaintiff's claim that a requirement of fair notice should estop the defendant to deny coverage. It is not apparent how an estoppel to deny coverage can arise unless there is some basis to find coverage in the first instance.

The record indicates that the defendant met its burden under RSA 491:22-a to prove there was no coverage under the policy. We affirm the judgment below.

*Affirmed.*

All concurred.