788 P.2d 1227

## UNITED STATES FIDELITY & GUARANTY CORPORATION, a Maryland corporation, Plaintiff–Appellee,

v.

## ADVANCE ROOFING & SUPPLY CO., INC., an Arizona corporation, Defendant–Appellant.

No. 1 CA–CV 88–003.

Court of Appeals of Arizona, Division 1, Department D.

Dec. 14, 1989.

Review Denied April 17, 1990.*

* Feldman, V.C.J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

Jennings, Kepner & Haug by Craig R. Kepner and Michael J. Raymond, Phoenix, for plaintiff-appellee.

Campana, Vieh & Strohm, P.C., by Richard L. Strohm and Scott B. Mitchell, Scottsdale, for defendant-appellant.

LEVI RAY HAIRE, Judge, Retired.

The issues presented in this appeal concern whether the trial court correctly granted declaratory judgment in favor of an insurer, finding that the insurer had no duty to defend an action filed against its insured. The insurer (USF & G) had issued its comprehensive general liability policy covering appellant Advance Roofing & Supply Co., Inc. (Advance Roofing) for "all sums which the *Insured* shall become legally obligated to pay as damages because of ... *property damage* to which this insurance applies, caused by an occurrence...." (emphasis in original.)

The coverage issues involved in this appeal arise out of a contract entered into between Advance Roofing and Villas West IV Homeowners Association (Homeowners Association), pursuant to which Advance Roofing contracted to replace all the roofs of 250 units in a housing complex governed by the Homeowners Association. In consideration of Advance Roofing's undertaking to replace the 250 roofs, the Homeowners Association agreed to pay Advance Roofing the total sum of $253,360.00. Upon the alleged breach of that contract by Advance Roofing, the Homeowners Association filed a complaint alleging, among other claims, a breach of contract claim against Advance Roofing.

The Homeowners Association's complaint named as defendants the individual members of its own board of directors as well as four other defendants who had entered into various contracts with the Homeowners Association. The complaint contained 14 separate claims for relief, and in essence alleged that one member of its board of directors had wrongfully and fraudulently diverted and disposed of funds of the Homeowners Association by entering into certain contracts with the four other defendants, leading to personal

profit and gain on that member's part. The complaint sought recovery of the monies paid to these four other defendants pursuant to their contracts with the Association. Claims were asserted against the other members of the board of directors based on negligent breach of fiduciary relationship. Claims against all of the four defendants other than the members of the Association's board of directors were asserted for breach of contract and unjust enrichment, with claims for civil racketeering being asserted against defendants other than Advance Roofing.

Against this background we now focus on the specific claim asserted against Advance Roofing. The fourth claim for relief was entitled "Breach of Contract by Advance." It alleged that Advance Roofing had agreed to replace the 250 roofs in consideration of the Association's promise to pay the sum of $253,360. It was further alleged that:

"Defendant Advance has failed and refused to perform its obligations under the contract. Upon information and belief, Defendant Advance replaced only 40 roofs, some of which were not replaced as required under the terms of Contract. The work that was performed by Defendant Advance was not completed in accordance with the contract requirements and was not performed in a good and workmanlike manner."

Although from the above quoted allegations of the complaint it appears that Advance Roofing had replaced only 40 of the 250 roofs, and did faulty work on those, it further appears that notwithstanding this almost total lack of performance on Advance's part, Advance had been paid the full amount due under the contract, $253,-360. Accordingly, the breach of contract claim against Advance alleged that as a direct and proximate result of Advance Roofing's breach of contract, the Homeowners Association had sustained damages in the full amount of the contract price, $253,360.

The only other claim asserted against Advance Roofing was entitled "Unjust Enrichment." That claim sought recovery of the contract amount, asserting that the Homeowners Association had paid the $253,360 to Advance, and that accordingly Advance had been unjustly enriched at the expense of the Association.

The Homeowners Association's complaint against Advance Roofing and the various other defendants was filed in July, 1986. In October, 1986, Advance Roofing requested that USF & G defend Advance against the claims asserted by the Homeowners Association. USF & G refused to do so, contending that under its policy, it had no obligation to defend or indemnify Advance concerning the claims asserted in the complaint. In order to resolve the controversy concerning its policy obligations, USF & G then filed this action for declaratory judgment, naming both Advance Roofing and the Homeowners Association as defendants.

Some ten months after the filing of the complaint for declaratory judgment, USF & G filed a motion for summary judgment. USF & G contended that there were no disputed issues of material fact and that it was entitled to judgment as a matter of law. Its motion presented three separate grounds for the entry of judgment in its favor. First, USF & G urged that based on certain exclusions in its policy (business risk exclusions), the policy provided no coverage for property damage liability which Advance Roofing might have incurred for property damages arising out of Advance's performance of its contract with the Homeowners Association.

USF & G's second argument was that even if the business risk exclusions were inapplicable, its policy provided liability coverage for bodily injury and property damages only, and that no such damages were sought in the claims alleged against Advance in the Homeowners Association's complaint. USF & G's third argument, somewhat related to its second argument, was that in any event coverage under its policy was limited to property damages *caused by an occurrence,* and that the complaint did not present a claim based on an occurrence as defined in the policy.

In granting USF & G's motion for summary judgment, the trial judge did not find it necessary to consider USF & G's first argument based on the business risk exclusions in the policy. Rather, the summary judgment was based upon USF & G's second and third arguments that the complaint did not seek property damages, and that if property damages were sought, they were not the result of an occurrence as defined in the policy. The trial judge's minute entry order granting summary judgment stated, in pertinent part:

> "Counsel agree that the policy does NOT cover Count 8, the unjust enrichment count and further agree that the policy does not cover economic losses in Count 4 which is breach of contract seeking damages in the anticipated benefit of the bargain measure.
>
> "A careful reading of the underlying complaint in C 586297 does not disclose a claim for property damages as a result of an occurrence. In an answer to an interrogatory there is suggested that there was some water damage to some homeowner's property (furniture) but that is not alleged nor have any invoices, etc. been made part of the record. In addition, there is no claim that the Homeowner's Assn. has any right to sue for such property damage.
>
> "There being no genuinely contested issue of material fact and the law favoring the position of plaintiff, ORDERED granting plaintiff's Motion for Summary Judgment and denying defendant Advance Roofing's Cross Motion for Summary Judgment."

## THE BUSINESS RISK EXCLUSIONS

Although the parties have devoted a substantial part of their briefs in this appeal to USF & G's contention that the provisions in its policy relating to the business risk exclusions preclude any possibility of coverage, we find it unnecessary to consider that issue. First, as we have previously noted, the trial court did not consider that issue in granting summary judgment in favor of USF & G. More importantly, even though USF & G has presented strong arguments

in favor of its position on that issue, it is our opinion that the Arizona Supreme Court's decision in *Federal Insurance Co. v. P.A.T. Homes, Inc.,* 113 Ariz. 136, 547 P.2d 1050 (1976), precludes our adoption of the policy interpretation urged by USF & G. We therefore turn to the other issues presented on appeal.

## THE DAMAGE ALLEGATIONS

■ Advance Roofing first argues that, contrary to USF & G's contentions, the Homeowners Association's complaint does allege a claim for property damages against Advance. To support this contention, Advance points solely to the allegation in the breach of contract claim that: "the work that was performed by Defendant Advance was not completed in accordance with the contract requirements and was not performed in a good and workmanlike manner." We reject Advance's contention that this can be considered as constituting a claim for property damage in the context of the breach of contract claim filed by the Homeowners Association.

Obviously the complaint does not expressly allege property damage. The claim against Advance is denominated "breach of contract" and the Homeowners Association seeks damages equal to the original contract price which the Association had paid in full to Advance prior to Advance's breach. The only damage complained of was that Advance had replaced only 40 of the 250 roofs, "some of which were not replaced as required under the terms of the contract" and that the work that was performed by Advance "was not completed in accordance with the contract requirements and was not performed in a good and workmanlike manner." Immediately following these allegations is the following:

> "Plaintiff has demanded that the services promised under the contract be performed as agreed. Despite such demand, Defendant has failed and refused, and continues to fail and refuse, to perform such services pursuant to the terms and conditions of the contract."

This allegation is followed by the assertion that as a direct and proximate result of

the breach of contract by Advance, the Homeowners Association has suffered damages in the amount of the contract price.

The term "property damage" is defined in the policy. The term includes *loss of use* of tangible property under certain circumstances, none of which is urged as being pertinent to the issues presented in this litigation. The primary definition, other than that relating to loss of use, is:

> "*Property Damage* means: (1) physical injury to or destruction of tangible property which occurs during the policy period...."

After careful review of the allegations of the complaint against Advance, we agree with the trial court's conclusion that the complaint does not allege or put USF & G on notice that in its complaint the Homeowners Association is seeking property damages as defined in the policy.

## DUTY TO INVESTIGATE

Advance Roofing urges that even if the complaint did not allege a claim for property damages on its face, USF & G had a duty to make a reasonable, good faith investigation into the factual basis of the complaint's allegations before declining Advance's tender of defense.

The leading Arizona decision relating to an insurer's duty to defend is *Kepner v. Western States Fire Insurance Co.*, 109 Ariz. 329, 509 P.2d 222 (1973). In *Kepner,* although the allegations of the complaint would have imposed on the insurer a duty to defend, the insurer contended that facts not alleged showed that there was no coverage under the policy and that it had no duty to defend. Opposing this view, the insured contended that the duty to defend must be determined solely from the allegations of the complaint. In this context, the Arizona Supreme Court concluded that the duty to defend should focus on the facts rather than solely upon the allegations of the complaint, and that there was no duty to defend where "... the alleged facts ostensibly bring the case within the policy coverage but other facts which are not reflected in the complaint plainly take the case outside the policy coverage." 109 Ariz. at 331, 509 P.2d at 224. *See also, Salvatierra v. National Indemnity Co.,* 133 Ariz. 16, 648 P.2d 131 (App.1982).

Although the Arizona decisions clearly give an insurer the right to make a reasonable investigation of the facts in order to avoid a duty to defend ostensibly imposed by the allegations of the complaint, we have found no Arizona authority defining the extent of an insurer's duty to investigate facts outside the allegations of the complaint where, as in this case, those allegations would not impose a duty to defend. This question has been addressed by the Minnesota Supreme Court in *Johnson v. Aid Insurance Company of Des Moines, Iowa,* 287 N.W.2d 663 (Minn.1980), as follows:

> "[W]hile a liability insurer may initially rely on the allegations of the underlying complaint to determine whether it must provide its insured with a defense, it may not rely on that determination, without investigating the facts, once the insured has come forward and made some factual showing that the suit is actually one for damages resulting from events which do fall into policy terms."

We find the Minnesota court's formulation of the insurer's duty to investigate sound and in accord with the standard applied by the trial court in this case. We now turn to the summary judgment proceedings to determine whether the insured came forward with a sufficient factual showing.

USF & G filed its declaratory judgment action in November 1986, after Advance had tendered the defense of the Homeowners action to USF & G in October, 1986. The filing of a declaratory judgment action is an appropriate method to determine an insurer's duties when the insurer has reason to believe that the policy does not cover the insured for events alleged. *See, Kepner,* 109 Ariz. at 331, 509 P.2d at 225.

USF & G's motion for summary judgment was filed some ten months after the filing of the declaratory judgment action,

and approximately 14 months after the filing of the Homeowners' complaint. Prior to the filing of the motion, USF & G served interrogatories on Advance, requesting that Advance disclose all facts in support of its allegation that USF & G was obligated to provide Advance with a defense in the Homeowners' action. Advance's response referred to the complaint itself, erroneously contending that the complaint alleged that the Homeowners Association suffered property damages caused by leaking roofs. The response to the interrogatories was neither signed nor verified by Advance.

■ After the filing of USF & G's motion for summary judgment, Advance did not come forward with any competent evidence that the Homeowners Association's complaint sought property damages.[1] In its response, Advance relied upon its unsigned, unverified and erroneous answer to the interrogatory discussed above, and also on its attorney's affidavit. That affidavit contained a hearsay statement to the effect that the attorney had been told by counsel for the Homeowners Association that the Homeowners Association was seeking recovery of property damages sustained by various homeowners as a consequence of leaks in roofs allegedly repaired or replaced by Advance.

Faced with this record, the trial court ruled that Advance had not presented a factual record demonstrating that the Homeowners Association was seeking property damages in its breach of contract claim against Advance Roofing. We agree. A party may not resist a motion for summary judgment by general statements or allegations of its counsel, *Matter of the Estate of Kerr*, 137 Ariz. 25, 667 P.2d 1351 (App.1983), nor are affidavits based on hearsay sufficient, *Jabczenski v. Southern Pacific Memorial Hospitals, Inc.*, 119 Ariz. 15, 579 P.2d 53 (App.1978); *Madsen v.*

*Western American Mortgage Company*, 143 Ariz. 614, 694 P.2d 1228 (App.1985). Here, USF & G properly proceeded to determine its obligations by filing a declaratory judgment action when faced with its insured's request for a defense. Although the Homeowners Association's action had been pending for over 14 months, and USF & G's declaratory judgment action had been pending for approximately 10 months, Advance did not come forward and appropriately demonstrate that the Homeowners Association was seeking damages within the coverage of USF & G's policy.

### "OCCURRENCE"

USF & G also contends, and the trial court found, that there was no allegation or showing that the damages sought by the Homeowners Association resulted from an "occurrence" as defined in the policy. Because Advance's arguments on this issue appear to overlap its arguments concerning property damages, we now proceed to discuss that issue.

The policy defines "occurrence" as follows:

> *"Occurrence* means an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *Insured.*" (Emphasis in original.)

Advance urges that faulty workmanship is itself an occurrence within the policy definition, and that therefore the complaint's allegations are sufficient in that regard. Advance's argument focuses on prior Arizona decisions construing standard "business risk" exclusion clauses as requiring coverage for faulty workmanship. *See, Federal Insurance Co. v. P.A.T. Homes, supra; Custom Roofing Co. v. Transamerica Insurance Co.*, 120 Ariz. 196, 584 P.2d 1187 (App.1978). However, the deci-

---

1. USF & G moved for summary judgment against both Advance and the Homeowners Association. The Association filed a late response which included an affidavit of its attorney indicating that the Association had paid $500 to settle claims for water damages resulting from work performed by Advance. The trial judge apparently did not consider the Association's late response. Advance neither referred to nor relied on the Association's response in the motion proceedings in the trial court nor in its briefs filed in this appeal. The Homeowners Association did not appeal from the granting of USF & G's motion for summary judgment against it, and it is not a party to this appeal.

sions in those cases addressed only the interpretation of the "business risk" exclusions to coverage, and did not address the threshold question of whether property damage was alleged which would fall within the policy coverage in the absence of the business risk exclusions. These are separate questions, and even though the business risk exclusions are held inapplicable, the alleged "faulty work" must nevertheless amount to an occurrence resulting in property damages before coverage can be found. This point is well demonstrated by the decisions of the New Hampshire court, which, like Arizona, has rejected USF & G's interpretation of the business risk exclusion provisions. *See, McAllister v. Peerless Insurance Co.*, 124 N.H. 676, 474 A.2d 1033 (1984).

As previously noted, the complaint does not explicitly allege property damage, but does allege faulty workmanship. Advance does not address whether the damages resulting from faulty workmanship may not necessarily be property damages, but rather ignores this question in advancing its faulty workmanship arguments. Advance argues that faulty workmanship constitutes an "occurrence", and therefore is covered under the policy, citing *Colard v. American Family Mutual Insurance Co.*, 709 P.2d 11 (Colo.App.1985). *Colard* holds that faulty workmanship creating exposure to continuous unexpected conditions which result in property damage is an occurrence within the meaning of a similarly worded policy. The *Colard* decision furnishes no factual detail regarding the facts constituting the faulty workmanship nor the nature of resulting damages.

Advance also relies on *Ohio Casualty Insurance Co. v. Terrace Enterprises, Inc.*, 260 N.W.2d 450 (Minn.1978), in support of its argument that faulty work in and of itself constitutes an occurrence. However, Advance misconstrues the holding and rationale of the court. In that case, the court held that the *settling of a building* as a result of faulty workmanship was the occurrence.

Nevertheless, we recognize that there are some authorities that appear to conclude that the mere showing of faulty work is sufficient to bring a claim for resulting damages (of whatever nature) within policy coverage. *See, e.g., Sterilite Corporation v. Continental Casualty Company*, 17 Mass.App. 316, 458 N.E.2d 338 (1984); *Yakima Cement Products Co. v. Great American Insurance Co.*, 22 Wash.App. 536, 590 P.2d 371 (1979), rev'd. on damages grounds, 93 Wash.2d 210, 608 P.2d 254. In our opinion these authorities disregard the fundamental nature of a comprehensive general liability policy of the type involved in this litigation, and ignore the policy requirement that an occurrence be an accident. If the policy is construed as protecting a contractor against mere faulty or defective workmanship, the insurer becomes a guarantor of the insured's performance of the contract, and the policy takes on the attributes of a performance bond. We find these authorities unpersuasive.

■ In our opinion, the better reasoned authorities hold that mere faulty workmanship, standing alone, cannot constitute an occurrence as defined in the policy, nor would the cost of repairing the defect constitute property damages. This precise issue was addressed by the New Hampshire court in *McAllister*. In discussing the insured's contention that faulty work constituted an occurrence resulting in property damages, the court noted:

"[The insured] did not claim that such defects had caused damage to any other property than the work product, *nor did he claim any damage to the work product other than the defective workmanship.*" (Emphasis added.)

The court then emphasized that there was no policy coverage for a claim merely to correct a defect in workmanship, citing its prior decision in *Hull v. Berkshire Mutual Insurance Company*, 121 N.H. 230, 427 A.2d 523 (1981), stating:

"[In Hull] we held that defective work, standing alone, did not result from an occurrence, and indeed was not property damaged within the meaning of the policy."

The New Hampshire court distinguished its prior decision in *Commercial Union Assurance Companies v. Gollan,* 118 N.H. 744, 394 A.2d 839 (1979), in which it had held under similar circumstances that a policy's business risk exclusions did not preclude coverage, noting that in *Gollan* the parties had stipulated that the only issue was whether the business risk exclusion negated coverage. Accordingly, the court in *Gollan* was not concerned with whether in the absence of such exclusions, there was an occurrence and resulting property damage so as to initially bring the claim within policy coverage. *See also, St. Paul Fire & Marine Insurance Company v. Coss,* 80 Cal.App.3d 888, 145 Cal.Rptr. 836 (1978); *Hamilton Die Cast, Inc. v. United States Fidelity & Guaranty Co.,* 508 F.2d 417 (7th Cir.1975).

■ Advance's final argument is that even if there has been no occurrence resulting in property damages, USF & G's policy gives the insured the impression that it covers faulty workmanship, and therefore it must be construed to grant such coverage. Advance urges that "the reasonable expectation is still ·that exclusion (a) preserves coverage for faulty workmanship." [2] Advance's rationale appears to be that because the Arizona Supreme Court held in *P.A.T. Homes* that exclusion (a) renders the business risk provisions of the policy ambiguous, the same result applies when exclusion (a) is read in conjunction with the definition of "occurrence" contained in the policy. We reject that analysis.

The policy exclusions, including exclusion (a), merely subtract from coverage already granted. The excepting language to exclusion (a) merely excepts certain circumstances from the scope of exclusion (a). It does not purport to refer to or modify in any way the policy's definition of "occurrence",

granting coverage only in situations involving an occurrence as so defined.

Advance relies on *Commercial Union Assurance Co. v. Gilford,* 119 N.H. 788, 408 A.2d 405 (1979) in support of its argument on this issue. Although we do not find the court's analysis persuasive, we note that the issue involved in *Gilford* was whether a "care, custody and control" exclusion could be given effect in view of the *Gilford* court's holding negating the business risk exclusions in the policy. The decision does not involve the question of whether the policy's definition of "occurrence" is rendered ambiguous as it relates to any "reasonable expectation of coverage" engendered by exclusion (a). Directly in point, however, is a later decision of that same court involving the same definition of occurrence and the same exclusion (a) as in this case. In *McAllister v. Peerless Insurance Company, supra,* the New Hampshire court stated:

"The fortuity implied by reference to accident or exposure is not what is commonly meant by a failure of workmanship [referring to the exception to exclusion (a) ]. *Hull v. Berkshire Mutual Insurance Co.,* 121 N.H. 230, 427 A.2d 523 (1981); *Tinker, Comprehensive General Liability Insurance—Perspective and Overview,* 25 Fed'n.Couns.Q. 217, 231 (1975). The master therefore rightfully concluded that the declarations in the underlying action allege no occurrence. *Despite proper deference then to the reasonable expectations of the policyholder, Town of Epping v. St. Paul Fire & Marine Ins.,* 122 N.H. 248, 252, 444 A.2d 496 (1982), *we are unable to find in the quoted language a reasonable basis to expect coverage for defective workmanship."* 474 A.2d at 1036. (Emphasis added.)

As previously noted in this opinion, the *McAllister* court then proceeded to hold

---

**2.** The language of exclusion (a) relied on by Advance is actually an exception to exclusion (a) of USF & G's policy:

"This insurance does not apply:
   (a) to liability assumed by the *Insured* under any contract or agreement except an *incidental contract;* but this exclusion does not apply to a warranty of fitness or quality of the *named*

*insured's products* or a warranty that work performed by or on behalf of the *named insured* will be done in a workmanlike manner." (Emphasis in original.) This exclusion is primarily pertinent to Advance's arguments relating to the business risks exclusions, which we have accepted for the purposes of this opinion.

that defective work, standing alone, does not result from an occurrence, and is not "property damage" within the coverage of the policy.

For the reasons stated in this opinion, the judgment in favor of USF & G is affirmed. USF & G is awarded its attorney fees incurred in the defense of this appeal in an amount to be determined pursuant to Rule 21, Arizona Rules of Civil Appellate Procedure.

GERBER and SHELLEY, JJ., concur.

NOTE: The Honorable Levi Ray Haire, a retired judge of a court of record, was authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Ariz. Const. art. VI, § 20.