**Norma J. KENNERLY, Plaintiff Below, Appellant,**

**v.**

**The STATE of Delaware and Thomas Houska, II, in his official capacity, Defendants Below, Appellees.**

Supreme Court of Delaware.

Submitted: May 15, 1990.
Decided: Aug. 23, 1990.

Roger A. Akin, and Christopher J. Curtin (argued), Sawyer & Akin, P.A., Wilmington, Del., for appellant.

Frederick H. Schranck (argued), Deputy Atty. Gen., Dept. of Transp., Dover, Del., for appellees.

Before CHRISTIE, C.J., WALSH and HOLLAND, JJ.

WALSH, Justice:

This is an appeal from a grant of summary judgment in the Superior Court that terminated a suit for personal injuries brought by the appellant, Norma J. Kennerly ("Kennerly"), against the Delaware Authority for Specialized Transit ("DAST"), an agency of the State of Delaware, and Thomas Houska, II, a State engi-

neer.[1] Kennerly sustained serious injuries when an automobile in which she was a passenger struck a guardrail on property owned by DAST adjacent to Route 13 in New Castle County. The Superior Court ruled that the State had not waived its sovereign immunity through the purchase of liability insurance, as provided by 18 Del.C. § 6511, since the policies arguably applicable to Kennerly's claim did not provide coverage. We conclude that the coverage questions turn upon unresolved issues of fact and policy interpretation and that the grant of summary judgment was not appropriate. Accordingly, we reverse.

I

We view the facts underlying Kennerly's claim from the perspective of the non-movant resisting summary judgment. On May 2, 1985, Kennerly and a friend, Bettyjane Eipper ("Eipper"), left a tavern on the west side of Route 13 at approximately 10 p.m. It was raining heavily as they entered Eipper's vehicle. With Eipper driving, they left the tavern parking lot and proceeded southbound onto Route 13, a heavily traveled multi-lane highway. Eipper's turn onto Route 13 took a wide arc into the inner lane of the highway; after proceeding approximately 100 yards, she collided with a steel guardrail located in the center island dividing the highway. The guardrail in question extended 115 feet along the highway right-of-way, curving from six feet to two feet in set back. Eipper, who was charged with driving while intoxicated, was not hurt but Kennerly suffered a spinal cord injury that rendered her permanently quadriplegic.

The crash site is on property that for many years has been owned by the State of Delaware and used for various police and highway operations. In 1976, the site came under the control of DAST, for use as its operations center for New Castle County. At that time, contracts were let for certain site modifications, including the construc-

tion of a deceleration lane, with an adjacent guardrail, leading from the southbound lanes of Route 13. It was this guardrail that the Eipper vehicle struck.

DAST occupied this site until May, 1984, when it consolidated its operations at another location. During this period, DAST purchased two policies of insurance that bear upon the present claim for damages. The first, issued by The Travelers Insurance Company ("Travelers"), was a multi-risk policy that included general liability coverage of up to $500,000. The second, issued by Safety Mutual Casualty Corporation ("Safety Mutual"), was a commercial umbrella liability policy providing $5,000,000 of additional coverage. Both these policies continued to be in effect on May 1985, the date of Kennerly's accident.

In moving for summary judgment in the Superior Court, DAST relied upon the defense of sovereign immunity. Although acknowledging that the defense may be waived through the purchase of liability insurance as provided by 18 Del.C. § 6511, DAST contended that neither policy effected a waiver because Kennerly's claim was excluded from coverage under the Travelers policy and under the Safety Mutual policy as well, since the umbrella excess policy only served to enlarge the amount of coverage. Because DAST had not occupied the site in question for one year at the time of the accident, it argued that its liability insurance had no application, even though the policies remained in effect for other DAST operations and locations. The Superior Court agreed with this interpretation and granted summary judgment in favor of DAST. In our view such a ruling was premature, given the unsettled factual and legal disputes present in this record.

II

In the Superior Court, and here, the appellant bases her response to DAST's claim of sovereign immunity on the language of the Travelers policy. She begins with the

---

1. Houska was sued in both his individual and official capacities. The trial court granted him summary judgment in his official capacity only. Accordingly, he is not a party to this appeal in his individual capacity. For purposes of this appeal, we draw no distinction between Houska and his employer, the State of Delaware.

broad coverage undertaking set forth in the comprehensive general liability form:

1. **COVERAGE A—BODILY INJURY LIABILITY**

    **COVERAGE B—PROPERTY DAMAGE LIABILITY**

The Company will pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as damages because of

    Coverage A—**bodily injury** or

    Coverage B—**property damage**

to which this insurance applies, caused by an **occurrence,** and the Company shall have the right and duty to defend any suit against the **Insured** seeking damages on account of such **bodily injury or property damage,** even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

The term "occurrence" is defined as "an accident ... which results in **bodily injury** or **property damage** neither expected nor intended from the standpoint of the **Insured.**" For purposes of the aggregate limits of bodily injury liability, the term "occurrence" is further delineated in Section III B as follows:

B. **Aggregate Limits.** If there is an aggregate limit stated in the Liability Coverage Declarations, then, under

1. **Coverage A**—Subject to either above provision (A.1. or A.2.) respecting "each **occurrence**", the total liability of the Company for all damages because of (a) all **bodily injury** included within the **completed operations hazard** and (b) all **bodily injury** included within the **products hazard** shall not exceed the limit of **bodily injury** liability stated in the declarations as "aggregate".

Kennerly fixes upon the "completed operations hazard" as the activity for which coverage exists under the Travelers policy.

This term is defined in the policy as follows:

"**Completed operations hazard**" includes **bodily injury** and **property damage** arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the **bodily injury** or **property damage** occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the **Named Insured.** "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the **Named Insured** under the contract have been completed,

(2) when all operations to be performed by or on behalf of the **Named Insured** at the site of the operations have been completed, or

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

Kennerly contends that since the occurrence in which she was injured is not barred by any specified policy exclusion, coverage must be available as long as the bodily injury arose out of operations of DAST that were "completed" and occurred on premises no longer used by the insured. In rejecting "completed operations" coverage as a basis for Kennerly's claim, the Superior Court ruled that once DAST vacated the site where the accident occurred, its liability insurance no longer extended to allegedly dangerous conditions on the premises. In our view, however, the com-

pleted operations provisions cannot be read so narrowly.

In general, coverage for completed operations hazards is viewed as an extension of liability coverage and such coverage is cast in standard form.[2] Rhodes, *Couch on Insurance 2d* § 44.272 (rev. ed. 1982 & Supp.1989). Completed operations hazards, however, may also be excluded from liability coverage if the terms of the policy expressly provide. *Id.* § 44A:23. Thus, if the policy unambiguously excludes completed operation hazards, injuries or damages resulting therefrom will not be deemed an occurrence within the meaning of the policy. *R.A. Owens Constr. Co. v. Employers Ins. Co. of Ala.*, Ala.Supr., 392 So.2d 1180 (1981). Under the standard language for completed operation coverage, there must be completion of the work and the accident must "occur" after that completion. *McAllister v. Peerless Ins. Co.*, N.H.Supr., 124 N.H. 676, 474 A.2d 1033 (1984).

It appears that in general insurance usage, a completed operations coverage is intended to provide coverage to an insured, usually a contractor, for hazards not covered by general liability during the course of construction of the work or project. Since it is supplemental coverage, however, it might apply to situations in which the party responsible for the construction also controls the premises that have been improved by the work constituting the hazard. Thus, the applicability of such coverage to a former occupier who was responsible for the construction of a structure that it has subsequently left behind or abandoned is a question not easily resolved simply by reference to the language of the policy.

If the purpose of the completed operations coverage is to fill the gap left when the insured ceases to occupy the premises but permits a structure that it erected to remain on the premises, such coverage is arguably applicable. Although DAST no longer occupied the site beyond May 4, 1985, the State of Delaware continued to own the property. Thus, there was no change in ownership that would place direct responsibility upon a successor in title to assume responsibility for the safety of the premises.

In construing the language of a policy of insurance that is ambiguous or confusing, we are required to adopt a meaning against the interests of insurer who drafted the language. *Novellino v. Life Ins. Co. of N. Am.*, Del. Supr., 216 A.2d 420 (1966).[3] Here, the application of this rule of construction takes place in an unusual setting because the insurer is not a party to the litigation. We thus have the anomaly of the insured, DAST, arguing for a construction of the policy which denies coverage and thus benefits its insurer.[4] The result is that DAST, as an insured whose intent might be material on the question of the expectations of the purchaser of a contract of insurance, *State Farm Mut. Ins. Co. v. Johnson*, Del.Supr., 320 A.2d 345 (1974), appears as a surrogate for the insurers in seeking a denial of coverage. Such a stance further compounds the ability of the plaintiff to secure the benefit of all disputed factual inferences in resisting summary judgment.

Notwithstanding the assertion of no coverage by the insured in this case, we are of the view that the completed operations hazard, when applied to the history of DAST's presence on the site of the accident, raises sufficient doubt on this record to deny coverage as a matter of law. As previously noted, the policy provides for the inclusion, not the exclusion, of completed operations hazards, with general liability. It is also clear that the accident in

2. The policy provision here under review conforms to the standard language.

3. Where application of completed operations coverage is dependent upon ambiguous language of the policy, the question may be decided adversely to the insurer as the drafter of the disputed language. *Nixon v. United States Fidelity & Guar. Co.*, Fla.Supr., 290 So.2d 26 (1973).

4. At oral argument, the Court expressed its concern that the record does not reflect whether a demand for coverage was ever made by DAST against its insurers. No satisfactory explanation has been made as to the rationale for the State's insistence on sovereign immunity in the face of insurance protection of arguable application.

question was an "occurrence" within the period of time when the policy was in effect. The fact that DAST received an endorsement on the policy removing the Du Pont highway site as an insured premises does not, in itself, foreclose the question of coverage. While this change might preclude premises liability coverage, at the same time it satisfied at least one of the conditions of completed operations coverage: that the "bodily injury ... occurs away from premises owned or rented to the Named Insured." While the State of Delaware continued to own the premises, the named insured under both the Travelers and the Safety Mutual policies was DAST, not the State of Delaware.[5]

■ The doctrine of sovereign immunity is not favored in the law because its application tends to defeat claims and disputes on grounds other than the merits. *Pajewski v. Perry*, Del.Supr., 363 A.2d 429 (1976). The General Assembly's adoption of 18 *Del.C.* § 6511, which provides that the defense of sovereign immunity "cannot and will not be asserted" as to risks or loss covered by "commercially procured insurance," reflects a public policy that liability insurance purchased with public funds must be considered as a source for payment of claims against State agencies. *Doe v. Cates*, Del.Supr., 499 A.2d 1175, 1183 (1985). It may be that upon an enlarged record, or at trial, it can be demonstrated that the defense of sovereign immunity is valid because of the absence of liability insurance. On the present record, however, sufficient factual and legal doubt exists as to render inappropriate the grant of summary judgment based on that defense.

■ DAST argues that even if the Superior Court's interpretation of the insurance contracts is incorrect, it is entitled to summary judgment on other grounds, not addressed by the Superior Court. We decline to address issues not expressly ruled upon by the trial court. Supreme Court Rule 8. Nor have we considered the ques-

tion, urged by Kennerly, of the underlying duty of DAST to provide for the safety of users of adjacent highways in the construction and maintenance of improvements upon land. Although this issue may bear upon the extent to which DAST was "legally obligated" under its public liability insurance, the scope of that duty was not addressed in the Superior Court and thus is not properly before us.

■ Finally, we reject Kennerly's contention that coverage may exist under the excess umbrella policy issued by Safety Mutual independent of, and notwithstanding the absence of, coverage under Travelers' primary liability policy. Although the Superior Court did not expressly construe the excess policy, it did rule that neither policy provided coverage. If a policy of insurance provides that as to particular coverage it shall be "excess," the insurer is liable only if the primary insurance policy covers the loss in question and only to the extent the loss exceeds the amount of coverage provided by primary insurance. Rhodes, *Couch on Insurance 2d* § 62:48 (rev. ed. 1983 & Supp.1989). Here, the Safety Mutual policy not only limits the insurer's obligation to pay "the ultimate net loss in excess of the Insured's retained limit" but defines the retained limit to include underlying insurance on Schedule A of the policy. Among the policies of underlying insurance listed on that schedule is the general liability policy with aggregate coverage of $500,000 issued by Travelers. In our view, the Safety Mutual policy is a true excess policy, *i.e.*, it provides no coverage for additional risks but merely enlarges the amount available for payments of losses. The issue of coverage turns on the applicability of the Travelers policy, which in turn determines the amount available for payment of losses under the excess policy.

The decision of the Superior Court granting summary judgment to DAST was improvident in view of the unresolved

---

**5.** While it is conceded that DAST is an agency of the State, it is a separately incorporated subsidi-

ary of the Delaware Transportation Authority.

ambiguities regarding coverage and it is accordingly REVERSED.